Bennett LEVIN

v.

Howard GARFINKLE, Barbara Garfinkle, Asher Fensterheim, Cyrus West, K. B. Weissman, Edward Breger, Norman Septimus, Jack Deutschmann, Huckleberry Farm, Inc., HAW Corporation, Tafu Corporation, Czar Realty Corporation.

Civ. A. No. 77–3211.

United States District Court, E. D. Pennsylvania.

May 21, 1981.

Patrick T. Ryan, Mark Wilcox, Philadelphia, Pa., for plaintiff.

Jerome Shestack, David Smith, Philadelphia, Pa., for defendants.

## OPINION

LUONGO, District Judge.

Plaintiff Bennett Levin brought this action to recover compensatory and punitive damages from defendants for fraud, misrepresentation, and breach of fiduciary duty in connection with a series of complex real estate transactions in which the parties were involved from 1975 to 1977. The matter was tried in January, 1980, and on November 26, 1980, I entered judgment in Levin's favor against various defendants for $573,405, and for various unliquidated amounts. All parties filed appeals. Levin then pursued discovery in aid of execution under Rule 69(a), F.R.Civ.P. Defendants Fensterheim and Breger posted a supersedeas bond as provided in Rule 62(d), after

which Levin discontinued further discovery against them. Defendant Howard Garfinkle did not post a bond, however, and discovery to determine the extent and location of his assets continued. Levin, contending that discovery has established that the Garfinkle interests are in the process of hiding and liquidating assets, moves to join as defendants the transferees of Garfinkle's assets, for the appointment of a receiver to conserve those assets pending execution, or in the alternative for a preliminary injunction halting further transfer or dissipation of assets.[1]

Post-trial proceedings in this case have been complicated by the fact that the principal defendant, Howard Garfinkle, who was the mastermind of the scheme to defraud Levin, and whose financial affairs were conducted through an intricate network of shell corporations, died in December, 1980. Levin moved to substitute Garfinkle's personal representative under Rule 25(a), F.R.Civ.P., but his heirs have taken no steps to raise an estate, notwithstanding that Garfinkle appears to have left a will naming his wife Barbara and son Benjamin as executors. Moreover, as discussed below, Barbara and Benjamin Garfinkle continue to conduct the affairs of the various corporations formed by Howard Garfinkle, even though they have no apparent legal authority to do so.

In addressing the motions raised by Levin, an appropriate starting point is the observation that the voluminous evidence at trial,[2] and the post-trial discovery conducted by Levin, compel the conclusion that this is an unusual case warranting extraordinary relief. Garfinkle and, to a lesser degree, other of the defendants engaged in a systematic course of fraud against Levin over a period of three years. Garfinkle persuaded Levin to join him in a series of investments. Garfinkle routinely misrepresented to Levin crucial information about properties, such as rental receipts and expenses, and inserted strong-arm clauses in sales agreements and mortgages which allowed him to exploit Levin's precarious financial condition. Garfinkle maneuvered Levin into a condition of default on several large mortgages, and then renegotiated them on terms more favorable to himself. The Garfinkle operation even went so far as to maintain duplicate books on properties, one set accurately reflecting rental income and expenses, the other set reflecting bogus figures to impress prospective investors. Garfinkle conducted his business through a series of business entities such as HAW[3] Corporation and TAFU[4] Corporation, in which corporate formalities were disregarded, funds were commingled and diverted to Garfinkle's use without repayment, and in which assets, allegedly the property of the corporations, were pledged for Garfinkle's personal debts.

Although Howard Garfinkle is dead, his style of conducting business appears to have survived. As noted above, Barbara and Benjamin Garfinkle have not attempted to raise an estate.[5] Their lack of legal author-

---

1. This is the second instance in which Levin has moved for the appointment of a receiver or other emergency relief. Levin first moved for a receiver on October 8, 1980, shortly before a final judgment was entered in his favor. On November 26, I denied Levin's motion because at that time there was not sufficient evidence of fraud to justify granting extraordinary relief. After extensive post-judgment discovery, Levin again moved for a receiver on February 23, 1981. After several conferences and hearings on the motion, on April 6 the parties entered into a stipulation that the court would withhold action until May 17 so that they could pursue settlement of the case. Counsel has now informed the court by letter that attempts at settlement have failed, and therefore I have proceeded to resolve the motion.

2. See 492 F.Supp. 781 (E.D.Pa., June 11, 1980); 499 F.Supp. 1344 (E.D.Pa., October 16, 1980).

3. Allegedly an acronym for "Howard Always Wins."

4. Allegedly an acronym for "Try and Find Us."

5. Counsel for the Garfinkle interests in this action has informed the court by letter that the Garfinkle family has retained a New York law firm to probate Garfinkle's will. This has little relevance. The will has not yet been probated, nor is there any assurance that it will be. Moreover, testimony of Benjamin Garfinkle on deposition indicates that even if an estate is raised, the family's position will be that Howard Garfinkle possessed only personal belong-

ity has not prevented them from selling assets of Garfinkle's various corporations, however, as Benjamin Garfinkle recently sold a mortgage, which he acknowledged to have a fair market value of over $350,000, for the sum of $200,000. Of the proceeds, certain amounts went to satisfy the obligations of other Garfinkle corporations, and still other funds went to the personal use of Benjamin and Barbara Garfinkle.

During post-judgment discovery, Benjamin and Barbara Garfinkle forbade Cyrus West, the nominal president of many of the shell corporations, to comply with an order of this court that he bring certain corporate records with him to his deposition. They continued to forbid West to produce the documents even after he was cited for contempt and faced the prospect of imprisonment. Benjamin Garfinkle testified to his belief that he had authority to conduct the affairs of the Garfinkle corporations both because he was a partial owner of them, and because he was either an officer or director of them. However, he could not demonstrate that any stock had ever been issued, and could not specify what positions he held with any of the corporations. The record is plain that although Cyrus West is nominally the president of most if not all of the Garfinkle corporations, both he and the Garfinkle family view his job as being to follow whatever orders are issued by the Garfinkles, regardless of the legal formalities for conducting corporate business.

■ In short, the record is replete with evidence of fraud, and since the entry of judgment the Garfinkle interests have not only done everything in their power to frustrate Levin's attempts lawfully to discover assets and to execute, they have also attempted to obstruct the orders of this court.

■ Being satisfied that Levin is entitled to extraordinary relief, the far more difficult question is what form it should take. First, as to Levin's motion under Rule 25(c) to substitute as defendants the various shell corporations on the ground that they are the transferees of Garfinkle's interests, I agree as a general matter that Rule 25 can be employed after entry of judgment to substitute parties to whom a defendant's assets have been transferred for the purpose of avoiding execution. *Panther Pumps & Equipment, Inc. v. Hydrocraft*, 566 F.2d 8 (7th Cir. 1977). I do not agree that Rule 25(c) is applicable in this case. A motion under Rule 25(c) is grounded on the theory that there has been a transfer in ownership of assets. Here, Levin's theory throughout has been that the various corporate entities in question are the *alter ego* of Howard Garfinkle, and that this court should consider any action by them to be an action by Howard Garfinkle. It is anomalous for Levin now to contend that these entities are anything other than a manifestation of Howard Garfinkle himself. Accordingly, Levin's motion for substitution under Rule 25(c) will be denied.

■ As to Levin's request that I appoint a receiver, it is well-settled that appointment of a receiver is within the inherent equitable powers of any federal court. *Tanzer v. Huffines*, 408 F.2d 42 (3d Cir. 1969). Federal district courts have not hesitated to appoint receivers in cases where there is evidence of fraud which could lead to the dissipation of assets. *E. g., Bookout v. Atlas Financial Corp.*, 395 F.Supp. 1338 (D.Ga.1974), *aff'd*, 514 F.2d 757 (5th Cir. 1975); *Haase v. Chapman*, 308 F.Supp. 399 (W.D.Mo.1969).

■ Appointment of a receiver is a drastic remedy which should be invoked only under unusual circumstances. *Mintzer v. Arthur L. Wright Co.*, 263 F.2d 823 (3d Cir. 1959). As noted above, this case certainly qualifies as one in which an extraordinary remedy is justified. The Garfinkle interests have persisted in conduct which makes clear their intention to frustrate Le-

---

ings such as clothing and jewelry at the time of his death. Levin contends that substantial investments and real estate holdings nominally the property of the various shell corporations should be included as part of Garfinkle's estate.

The Garfinkle interests contend that these assets are legally owned by the corporations, and that Garfinkle's wife and children own all of the stock in the corporations.

vin's attempts to execute upon his judgment. Assets of various Garfinkle corporations are now being sold by Garfinkle family members who have no apparent legal authority to sell them, and the proceeds are now being distributed at the whim of the Garfinkles. Mere injunctive relief is not likely to suffice, because the Garfinkle interests have demonstrated that they do not consider themselves subject to the orders of this court.[6]

Defendants oppose the appointment of a receiver on several grounds. First, they contend that I lack jurisdiction over the various corporations which are the subject of Levin's motion. In technical legal terms there is some merit to this argument. Although the corporations have been properly served, there is no evidence that they, as independent legal entities, are present in the Commonwealth of Pennsylvania. Accordingly, it would appear that this court has no basis for asserting jurisdiction over them. To accept this argument however would require me to overlook what is painfully obvious on the face of this record— that these corporations have no independent legal existence, but are in every respect the *alter ego* of Howard Garfinkle. Cyrus West, president of the corporations which are the subject of Levin's motion, concedes that all actions taken by these corporations were taken at Garfinkle's direction; that West has no knowledge of who the shareholders are; that the assets and funds of the corporations were distributed solely at the direction of Howard Garfinkle and for his use; and that whatever decision Garfinkle made was final. Deposition of Cyrus West, February 18, 1981, pp. 3–20. At this point, the affairs of these corporations should be controlled by Garfinkle's personal representative, whom Levin has moved to substitute as a defendant in this action. But a personal representative is not before this court because the Garfinkle interests have deliberately failed to qualify a representative in what appears to be an attempt to liquidate Garfinkle's assets without judicial scrutiny. In effect, therefore, the defendants' position is that this court, in exercising its equitable powers, should adhere to a rigid concept of jurisdiction which gives them the benefit of the corporate formalities which they themselves have blatantly ignored. Quite clearly the Garfinkle interests are not entitled to have it both ways, and their argument that the corporations have a separate identity is rejected.

Rejection of defendants' jurisdictional arguments does not offend principles of due process. Plainly both the corporations, such as they are, and the principals who in reality control those corporations had notice of these proceedings and the opportunity to be heard. The corporations are not traditional businesses rooted in a geographical area, but paper creations which operated wherever Howard Garfinkle happened to be. Subjecting them to the jurisdiction of this court in no way differs from subjecting whomever ultimately appears as the personal representative of the late Howard Garfinkle.

Defendants further argue that Levin has failed to show that each of the corporations he wishes placed in receivership is merely an *alter ego* of Howard Garfinkle. I find this position puzzling, inasmuch as Cyrus West, who is purportedly president of all of the corporations in question, has conceded that the corporations had no existence apart

6. At various stages in the post-trial proceedings, representatives of the Garfinkle interests have contended that this court lacks personal jurisdiction over them. There is certainly no merit to these arguments with respect to Cyrus West and Barbara Garfinkle. West, who is a defendant in this action and president of the various corporations, and who has a counterclaim pending in this action, unsuccessfully challenged jurisdiction in appealing his contempt citation. *Appeal of Cyrus West*, 642 F.2d 445, (3d Cir., 1981). Barbara Garfinkle is similarly situated: she was a named defendant and has a pending counterclaim. As to Benjamin Garfinkle, although not originally named as a defendant, he has been acting as *de facto* personal representative of Howard Garfinkle, has been served with process in connection with these proceedings, and has appeared before me. Defendants' jurisdictional arguments are groundless, and I do not accept that their attempts to interfere with Levin's discovery and with orders of this court can be attributed to their adoption of a good faith legal position that this court was acting in excess of its authority.

from Howard Garfinkle, and that he now takes orders from the Garfinkle family, orders which he follows even when faced with the threat of imprisonment. Moreover, defendants have not produced a shred of evidence to the contrary; there are no stock certificates, no minutes, and no general corporate records. The only record apparently kept is one of cash disbursements, and it reflects that corporate formalities are ignored, funds are commingled, and the proceeds of sales are diverted to personal use. I fail to see what further proof Levin should be required to produce.

■ The defendants next argue that the proceeds from sales to date have been properly accounted for because the cash disbursement record reflects where the funds went. As noted above, what the records reflect is that the funds have been spent on a variety of things other than corporate business, including personal bills of the Garfinkles. To suggest that this is an acceptable use of funds which are purported to be corporate funds is absurd.

Defendants further contend that in seeking the aid of this court, Levin is attempting to circumvent available state court procedures for execution and protection of a judgment. Levin has once already sought to have local New York officials take control of Garfinkle's estate, but failed. Defendants contend that Levin's recourse is to bring suit in New York seeking a declaration that the various corporate entities are *alter egos* of Howard Garfinkle, and seeking to enjoin those conveyances which Levin deems fraudulent.

■ I agree with defendants that, in theory, there are state court remedies which Levin can pursue. The issue in deciding whether to grant equitable relief, however, is whether those remedies are adequate, and I find that they are not. By the time Levin commences an action in New York and is heard on his claims, there is a substantial likelihood that Garfinkle's assets would be completely dissipated, because the defendants have made clear their intention to exhaust every means at their disposal to block Levin's execution. It has taken Levin over three years to win a judgment from Garfinkle, and to expose him to further risk of fraud at the hands of the defendants would be inequitable.

Moreover, I see little purpose to be served by relitigating many of the issues in this suit in the New York courts. As noted above, the record in this case is voluminous. The defendants have been given ample opportunity to establish the independent existence of these corporations in this court, and it is plain that they are in fact *alter egos* of the late Howard Garfinkle. It is also obvious that Barbara Garfinkle and Benjamin Garfinkle, at this juncture, lack authority to conduct the affairs of these corporations or of Howard Garfinkle's estate, but they are nonetheless selling assets. On a record such as this one, I cannot refrain from protecting a judgment of this court simply on the ground of comity, because whatever respect may be due the courts of New York state, there is a strong probability that this case will not reach them until it is too late for their action to be meaningful.

Defendants further contend that appointment of a receiver by this court will interfere with the orderly administration of Garfinkle's estate as directed by the New York Surrogate Court. This does not follow, because my purpose in appointing a receiver is to conserve the assets of the estate to allow for orderly administration, not to substitute the judgment of this court for that of the Surrogate Court in New York. Once it becomes clear that the further protection of this court is unnecessary because of proceedings in the Surrogate Court, the receivership will be dissolved.

In view of the foregoing, I will enter an order appointing a receiver to assume control of all personal assets of the late Howard Garfinkle. For purposes of this order, the following corporations and their assets are to be considered as personal assets of the late Howard Garfinkle:

| | |
|---|---|
| O. R. Management, Inc. | WAW Corporation |
| R. W. Realty, Inc. | Carolina & Tennessee Realty |
| QMB Realty, Inc. | Dallas & Abilene Realty |
| Edgewater Park, Inc. | Forest & Greenville Realty |
| Edgewater Park Associates, Ltd. | Guardian & Johnstown Realty |

Indiana & Evansville Realty
PRQ Realty Inc.
Alabama & Missouri Realty
HAW Corporation

Huckleberry Farm, Inc.
Chestnut Grove Realty, Inc.
A.E.I. Laundry Associates

The principal duty of the receiver will be to conserve the assets of Howard Garfinkle until Howard Garfinkle's duly authorized representative posts a supersedeas bond for Levin's judgment, or Levin's judgment is satisfied, or it becomes apparent that the assets of the estate will be protected by proceedings in the courts of New York state.

In the absence of statute, whether to require a bond as a prerequisite to appointment of a receiver rests within the discretion of the district judge. *Ferguson v. Tabah*, 288 F.2d 665 (2d Cir. 1961). 7 Moore, *Federal Practice* ¶ 66.04[6] p. 1920 (1980). Here, I am persuaded that because of the drastic nature of the relief which Levin seeks, the receivership should take effect only after Levin has posted a bond in the amount of one million dollars, as security for compensation which may be due the defendants for injuries incurred in the event that it is later ruled that appointment of a receiver was improper. In that event, Levin will also have taxed against him the costs associated with the appointment.

In accordance with the foregoing, Levin's motion for appointment of a receiver will be granted.