724 F.Supp. 313 (1989)
UNITED STATES of America and United States Postal Service, Plaintiffs,
v.
CEN-CARD AGENCY/C.C.A.C., a New Jersey Corporation, Santo Rigatuso, a/k/a Bob Harris, an individual, and Diana Rigatuso, an individual, Defendants.
Civ. No. 88-3919 (HLS).
United States District Court, D. New Jersey.
November 8, 1989.
*314 Kevin McKenna, Office of the U.S. Atty., D. New Jersey, Newark, N.J., for plaintiffs.
Sheldon Lustigman, New York City, for defendants.

*315 OPINION
SAROKIN, District Judge.

Introduction
Defendants in this case preyed upon a segment of our society which finds itself unable to obtain credit that many, if not most, consumers take for granted. Defendants through intentionally false and misleading advertising suggested that customers could obtain major credit cards through the payment of a substantial fee. In fact, the payment of that fee entitled the consumer to the dubious distinction of being able to purchase on credit from catalogues, only merchandise manufactured or distributed by defendants or their affiliated companies.
Defendants challenge the court's power to order the return of moneys obtained by them to the consumers so defrauded. Defendants suggest that the victims of their fraud may only be reimbursed by bringing direct suits against Cen-Card, and that the government has neither the standing nor the power to obtain or return these funds.
Defendants surely recognize that individual suits to recover $39.95 or $49.95 do not make economic sense and that a class action is both expensive and time consuming. The court concludes for the reasons hereinafter set forth that the government has the right and, indeed, the duty to procure these refunds for the victims of defendants' fraud. Government performs a vital service when it protects consumers from avarice and fraud in the marketplaces and restores what was wrongfully taken from those who were its victims.
The court now considers motions by the United States for summary judgment and awards of restitution and prejudgment interest, and a cross-motion by defendant Diana Rigatuso for summary judgment on the claims against her.

Background
This action stems from Cen-Card's solicitation in July 1988, of seven million persons, which offered credit cards with an initial charge limit of $2,850 without any credit investigation. The company's advertising suggested that customers would receive VISA, Mastercard or other nationally recognized credit cards for a $39.95 annual or $49.95 lifetime fee. The thousands of respondents to this solicitation either never heard from Cen-Card or received a cardboard card entitling them to purchase from an enclosed catalog of costume jewelry and reconditioned appliances and electric merchandise manufactured or distributed by companies which defendants owned and controlled.
The United States filed suit in this court under 18 U.S.C. sections 1341, 1343, 1345, and 39 U.S.C. sec. 3007 seeking restitutionary and preliminary and final injunctive relief against Cen-Card. On September 23, 1988, the court granted plaintiff's request for a preliminary injunction enjoining Cen-Card's allegedly fraudulent solicitations, allowing detention of Cen-Card's mail, freezing the company's assets, and ordering prompt compliance with government discovery requests. This order was affirmed by the Third Circuit. See United States v. Cen-Card Agency, 872 F.2d 414 (3rd Cir. 1989). In the meantime, defendant Santo Rigatuso, Cen-Card's owner, was held in criminal contempt for non-compliance with discovery requests, for conducting a renewed solicitation effort, and for dissipating and secreting Cen-Card assets with the aid of his wife, defendant Diana Rigatuso, a Cen-Card director who had not been active in the company's solicitations. (See Government's Stipulation of Facts, Diana Rigatuso Aff., Defendants' Exh. 1).
The Government now moves for summary judgment, arguing that no genuine issues of material fact remain as to whether Cen-Card's activities were a scheme or artifice to defraud or whether Cen-Card made use of the mails and wires in its solicitations, as required under 18 U.S.C. secs. 1341 and 1343. Furthermore, the Government seeks final injunctive relief barring prospective fraudulent solicitations, and a money judgment providing restitution to all of Rigatuso's pre-mail detention victims with pre-judgment interest.
Cen-Card contests this motion, arguing that issues of fact remain as to whether it intended to commit fraud and whether it in *316 fact deceived customers; that the court lacks jurisdiction under the mail and wire fraud statutes, 18 U.S.C. secs. 1341 and 1343, to award restitution; and that issues of fact remain as to whether customers were deceived by Cen-Card's advertising and whether customers in fact paid Cen-Card the prices mentioned in the solicitation. (Rigatuso Aff., at para. 9, 10). Furthermore, Diana Rigatuso, a Cen-Card director, has filed a cross-motion for summary judgment on the ground that she had no involvement in the schemes charged in the complaint.

LEGAL DISCUSSION:

Motion of the United States for Summary Judgment

1. Liability
When the court granted the United States' motion for a preliminary injunction, it found "uncontroverted evidence as to the mail and telephone solicitation" and that "[t]he solicitations are false and misleading and fraudulent on their face." Sept. 23, Transcript, at 39. The United States now argues that this determination, made at that earlier stage of the proceedings, is law of the case. (Br., at 11). The United States offers no authority for this proposition, which ignores the different burdens of proof under the preliminary injunction and summary judgment tests. The court's statement at the prior hearing was one of both law and fact, and therefore cannot be law of the case. See University of Texas v. Camenisch, 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981) ("the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits.")
However, the United States also argues that in any event, there continue to be no genuine issues of fact in the case. (Br., at 11-14). If there were no genuine issues of material fact at the time a preliminary injunction issued, and at the summary judgment stage the defendant is still unable to establish the existence of such issues, summary judgment is, of course, entirely appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).
The court therefore analyzes whether the Government has established that no issue remains as to mail and wire fraud. The essential elements of mail fraud under section 1341 are the existence of a scheme to defraud, use of the mails in furtherance of the scheme, and culpable participation by the defendant. United States v. Pearlstein, 576 F.2d 531, 534 (3rd Cir.1978). The elements of wire fraud under section 1343 are the existence of a scheme to defraud, and the use of interstate communications in furtherance of the scheme. United States v. Gordon, 780 F.2d 1165, 1171 (5th Cir.1986). The requirement of a "scheme to defraud" is identical under both statutes. United States v. Giovengo, 637 F.2d 941, 944 (3rd Cir.1980), cert. denied, 450 U.S. 1032, 101 S.Ct. 1743, 68 L.Ed.2d 228 (1981). It is this requirement which defendant Rigatuso contends that the Government has not satisfied.
Mr. Rigatuso has submitted an affidavit swearing that far from intending to commit fraud, he made the representations in the good faith belief that he would be able to offer nationally recognized credit cards. (Aff., at para. 2). Mr. Rigatuso supplies a letter dated June 24, 1988 from American Security Financial to a "Bob Harris Enterprises" which he says was written in the context of negotiations he held to obtain VISA and Mastercards for his customers. (Aff., Exh. 1). He argues that in the face of this evidence, the court would have to draw "factual inferences as to which reasonable men may differ," (Opp., at 10), to find that he intended to defraud his customers.
This court rejects this argument for two reasons. First, as the Third Circuit has held, a defendant may commit wire and mail fraud in a good-faith belief that he is obeying the law and that his statement will not turn out to be a misrepresentation. United States v. Boyer, 694 F.2d 58, 59-60 (3rd Cir.1982). The Government may establish intent under the statutes simply by showing that the defendant made material *317 misrepresentations of fact with reckless disregard to their truth or falsity. Id. at 60; Kronfeld v. New Jersey Nat'l Bank, 638 F.Supp. 1454 (D.N.J.1986) (intent standard under mail and wire fraud statutes is identical to scienter standard in 10(b) actions); see also United States v. Simon, 425 F.2d 796, 808-10 (2nd Cir.1969) (Friendly, J.) (showing of evil motive unnecessary to prove fraud). Furthermore, where the fraud is so clear on its face, the mere assertion that the speaker intended no fraud is insufficient to raise a factual issue. A proposed sale of the Brooklyn Bridge does not cease to be fraudulent if the purported seller asserts his intention first to acquire it.
Defendants also rely on the maxim that fraud cases are particularly inappropriate for resolution at the summary judgment stage. See, e.g., Associated Hardware Supply Co. v. Big Wheel Distrib. Co., 355 F.2d 114, 121 (3rd Cir.1966); Teledyne Industries, Inc. v. Eon Corp., 373 F.Supp. 191 (S.D.N.Y.1974); J. Moore, Federal Practice, para. 56.17[27] at 2215-16 (2nd ed.1988). However, defendants ignore that these authorities caution against granting summary judgment specifically in the case of complex schemes of fraud, and that they caution against placing much weight on catagorical denials of fraud, such as that supplied by Mr. Rigatuso in opposition to this motion. (Santo Rigatuso Aff., at para. 2). This is not a complex fraud case. As the court found at the initial preliminary injunction hearing, Cen-Card's "solicitations are false and misleading and fraudulent on their face." Sept. 23 Tr., at 39. Summary judgment on the issue of liability is therefore not inappropriate because of Mr. Rigatuso's denial of his intent to defraud.[1]
Furthermore, in its Reply, the Government comes forward with a written plea agreement which Rigatuso entered into with the United States Attorney's office for the District of Maryland, where he had been indicted for mail fraud and tax fraud. Pursuant to that agreement, Mr. Rigatuso has explicitly accepted responsibility for mail fraud. (Government Exh. 4, at 1). Based on this plea, and a proffer of facts from the Maryland U.S. Attorney's office (Exh. 3), the Government urges that defendant Rigatuso be estopped from denying his intent to defraud.
As the Government recognizes, there is Third Circuit authority running counter to the general proposition that a party who has pled guilty to a criminal charge is routinely estopped from denying such conduct in a subsequent civil action. Bower v. O'Hara, 759 F.2d 1117 (3rd Cir. 1985); but see State Farm Mutual Ins. Co. v. Rosenfield, 683 F.Supp. 106, 108 (E.D. Pa.1988); De Cavalcante v. Comm'ner of Internal Revenue, 620 F.2d 23, 26 n. 9 (3rd Cir.1980) (giving collateral estoppel effect to criminal guilty pleas). However, under the particular circumstances of this case, the court concludes that the defendant's plea is a binding admission of his intent to defraud and that he is estopped to deny such intent.
Furthermore, even absent the plea, the undisputed facts surrounding Cen-Card's solicitation, particularly the content of the offering, defendants' concealment and diversion of the monies received, and the conduct of the defendants after the issuance of the injunctive order, compels the court to conclude that defendants have failed to present any competent evidence raising an issue of fact as to defendants' intent to defraud. Santo Rigatuso's protestations to the contrary are insufficient to require a trial as to that issue.
Therefore, the court grants the Government's motion for summary judgment as to liability on the basis of the factual submissions before it with or without relying relying upon defendant Rigatuso's guilty plea.

*318 2. Damages
Relying on authorities interpreting other statutes, defendants argue that the court is without jurisdiction under 18 U.S.C. sec. 1345 to order restitution to the victims of Cen-Card's fraud.[2] The issue of statutory construction defendants present is whether the court has the power "to prevent a continuing and substantial injury ... to any person or class of persons" injured by Cen-Card's conduct as a final, as opposed to a preliminary, remedy. This issue hinges on whether the phrase "at any time before a final determination" modifies both "restraining order or prohibition" and "other action, as is warranted..." or solely the former.
The court is guided in this determination by the Third Circuit's affirmance (under an abuse of discretion standard) of the very broad relief ordered by the court at the preliminary injunction hearing. See United States v. Cen-Card Agency, 872 F.2d 414 (3rd Cir.1989). The Third Circuit denied Cen-Card's request for a stay of the court's order for the return of millions of dollars to victims of the scheme who mailed moneys to after the mail detention began. This remedy was not expressly provided for within the four corners of the statute.[3] The court sees no reason why Section 1345, which was adopted by Congress to increase the "inadequate" consumer mail fraud relief provided by 39 U.S.C. sec. 3007, see 1984 U.S.Code Cong. and Admin.News 3182, 3539-40, should be construed to prevent the return of moneys sent prior to detention of incoming mail. More importantly, the court finds that that defendants' interpretation would produce the absurd result of allowing the court to take broad remedial measures prior to resolution of all factual questions, but rendering it powerless to order such relief once defendants' responsibility for the fraud had been finally determined.
Accordingly, the court finds that it has jurisdiction, and proceeds to the merits of the Government's request for summary judgment as to damages.
In support of its this request, the Government offers an affidavit of Richard Mullin, president of the data processing firm which was retained by Rigatuso to process customer responses to the July and August 1988 solicitations. Relying solely on Cen-Card's records, which he states reflect the amount of money mailed by each alleged pre-detention victim, Mr. Mullin states that $1,486,536 was received from 31,280 customers. (Mullin Aff., at paras. 5-6). Rigatuso challenges the accuracy of these figures, contending that "many of the people who responded included bad or stale checks, or failed to enclose any monies at all" and speculating that Mr. Mullin may have incorporated receipts from "a modified solicitation." (S. Rigatuso Aff., at para. 10).
The second assertion fails to comply with the Rule 56(e) requirement that the party opposing a summary judgment motion "set forth specific facts showing that there is a genuine issue for trial." F.R.C.P. 56(e).
The first assertion also fails to satisfy the requirements of Rule 56(e). In apparent recognition of this defect, Mr. Rigatuso requests an opportunity to conduct further discovery on the issue of the amount of money actually paid out to Cen-Card. (S. Rigatuso Aff., at para. 11). Even if the court were to construe the affidavit as a Rule 56(f) application, the submission would be insufficient to stave off summary judgment; Mr. Rigatuso has failed to satisfy the Rule 56(f) requirements of demonstrating "what particular *319 information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." Dowling v. City of Philadelphia, 855 F.2d 136, 140 (3rd Cir.1988). Although on notice since February 1, 1989 that the Government planned to rely on Mullin's investigations of Cen-Card's own records, (4th Aff. of Robert Blackburn, at para. 3), Mr. Rigatuso offers no explanation for his delay in requesting this information. He has failed to "demonstrate, with specificity, diligent efforts ... and unusual circumstances which have frustrated those efforts." Koplove v. Ford Motor Co., 795 F.2d 15, 18 (3rd Cir.1986). Accordingly, the court denies Mr. Rigatuso's request for more time to obtain this information.
Finally, Rigatuso argues that he has "received 3,524 petitions from customers acknowledging that they were not misled" by the prior solicitation. (Aff., at para. 9). He contends that these petitions and the success of subsequent non-fraudulent mailings demonstrate material facts for consideration by a jury. The court found the very mailing prompting these petitions  which solicited an additional six dollars from Cen-Card's victims and contained claims that Mr. Rigatuso was in business to aid starving children  to be fraudulent and contemptuous. See Trans., November 1, 1988, at 3-5. Furthermore, Mr. Rigatuso does not supply the court with a single example of these petitions, therefore failing to satisfy the "specific facts" requirement of Rule 56(e).
Accordingly, the court grants summary judgment on the damage issue with interest, as demanded by the Government.

Diana Rigatuso's Cross-Motion for Summary Judgment
Defendant Diana Rigatuso moves for summary judgment on the grounds that there is no evidence of her involvement in the solicitations alleged in the complaint, that she had no knowledge of her husband's decision to list her as Director of Cen-Card when the company was incorporated in New Jersey in August of 1988, and that the Government's Stipulated Findings of Fact in the Maryland action specifically exculpate her. See Government's Exh. 3, at 3. The United States does not contest Mrs. Rigatuso's lack of involvement in her husband's original fraudulent scheme. (Reply, at 14). However, it observes that both the evidence before the court and its proffer in the criminal action make abundantly clear that Mrs. Rigatuso has functioned as an "alter ego for purposes of advancing their fraudulent aims" by transferring money through an intricate series of bank accounts.
Although there is no evidence of Mrs. Rigatuso's involvement in the solicitations, see United States v. Pearlstein, 576 F.2d 531, 541 (3rd Cir.1978) (requiring proof of knowledge and willful participation to hold employees liable for their employers' fraudulent conduct), allowing her to escape this court's jurisdiction might permit both defendants' contumnacious efforts to secrete profits from the solicitations to succeed.
In Levin v. Garfinkle, 514 F.Supp. 1160 (E.D.Pa.1981), the court, faced with a similar case of unusually persistent fraud involving transfers of funds between shell corporations, found that it had jurisdiction to order relief against defendants included and not included in the complaint to prevent the secreting of assets. Id., at 1162-64. In this similarly "unusual case" of recalcitrance "warranting extraordinary relief," id. at 1162, the court is satisfied that it has the authority to enforce a judgment against Diana Rigatuso, who is a named defendant and was directly involved in attempting to transfer assets so as to evade the orders of this court.
The court is satisfied that it must treat Diana Rigatuso as the alter ego of her husband for the purposes of this action to "prevent fraud, illegality [and] injustice." Publicker Industries v. Roman Ceramics, 603 F.2d 1065, 1069 (3rd Cir.1979) (citing Zubik v. Zubik, 384 F.2d 267, 272 (3rd Cir.1967). Although deciding to treat one entity as the alter ego of another must be based on specific facts, id., the court finds that Ms. Rigatuso's involvement in the secreting and co-mingling of assets makes her the alter ego of her husband and of the Cen-Card Agency.
*320 Accordingly, her motion for summary judgment is denied.

Conclusion
For the foregoing reasons, the United States' motion for summary judgment on the issue of liability is granted, the United States' motion for summary judgment as to damages is granted with interest, and Diana Rigatuso's motion for cross-motion for summary judgment is denied.
NOTES
[1] Defendants also argue that as many as 3,500 customers were not in fact defrauded, and were in fact satisfied with their limited purpose cards. (Opp., at 5). However, they cannot, and do not, deny that many customers were deceived by the Cen-Card solicitations. Therefore, this argument is irrelevant to the issue of liability, and is relevant, if at all, to the issue of damages.
[2] The section provides that:

The court shall proceed as soon as practicable to the hearing and determination of such an [injunctive] action, and may, at any time before a final determination, enter a restraining order or prohibition, or take such other action, as is warranted to prevent a continuing and substantial injury to the United States or to any person or persons or class of persons for whose protection the action is brought. 18 U.S.C. sec. 1345.
[3] The court's order of expedited discovery, freezing of assets, appointment of a receiver, and entry of contempt citations were likewise not expressly authorized by the statute, but were measures to effectuate the purposes of Section 1345. The first two remedies were presented by defendants in their appeal of the injunction. The Third Circuit affirmed.