LEONE INDUSTRIES, Plaintiff,

v.

ASSOCIATED PACKAGING, INC.; Michael Sarbello; Clifford L. Stafford, Jr.; Joseph John Centurione; Maria Cusano, General Administratrix of the Estate of Harry Cusano; and Maria Cusano, Defendants.

Civ. No. 91–1052 (WGB).

United States District Court,
D. New Jersey.

May 18, 1992.

Schnader, Harrison, Segal & Lewis by Edward W. Ferruggia, Philadelphia, Pa., for plaintiff.

Lario & Gleaner by Robert Gleaner, Haddonfield, N.J., for defendant Michael Sarbello.

Pepper, Hamilton & Scheetz by James D. Rosener, Berwyn, Pa., for defendant Association Packaging, Inc.

Pancari, Zerella, Tedesco & Pancari by Henry Zerella, Vineland, N.J., for defendant Maria Cusano.

Donald J. Goldberg, Philadelphia, Pa., for defendant Clifford L. Stafford Jr.

## OPINION

BASSLER, District Judge:

Leone Industries, Inc. ("Leone"), a glassware manufacturer, filed this civil racketeering complaint to recover losses stemming from a bribery scheme involving its controller. Leone moved for appointment pendente lite of a receiver or special master to manage the assets of defendant Michael Sarbello ("Sarbello"), a central figure in the bribery scheme. Instead of appointing a receiver, the Court by its order of April 6, 1992 appointed a special fiscal agent. This opinion explains the reasons for that order.

### Introduction

### I. The Criminal and Civil RICO Proceedings

Defendant Sarbello, formerly the president of defendant Associated Packaging, Inc., was convicted on December 26, 1990, of several criminal violations of 18 U.S.C. § 1961, et seq. ("RICO"). Plaintiff Leone was the victim of the RICO offenses, suffering financially because of a conspiracy in which Leone's controller accepted bribes from Sarbello and others in return for purchasing glassware packaging at inflated rates from Associated Packaging, Inc.

On April 15, 1991 U.S. District Court Judge John C. Lifland sentenced Sarbello to seven years in prison, fined him $250,000 and ordered him to pay restitution to Leone in an amount to be determined. See Judgment of Conviction, United States v. Sarbello, No. 90–00190–001 (D.N.J.1991).[1]

Shortly before the entry of judgment in the criminal matter Leone filed this civil action against Sarbello and other defendants, alleging, among other things, civil violations of the RICO statute. Count one of Leone's civil RICO complaint alleges the essential facts underlying the criminal RICO convictions. This court granted summary judgment as to liability in favor of Leone and against Sarbello on that count.[2]

In this civil action against Sarbello and other defendants, Leone seeks treble damages and attorney's fees, or an estimated $1.5 million. The amount of damages due from Sarbello, however, was not an issue at summary judgment, and remains to be determined at trial.

### II. Procedural History

In January 1992 Leone sought an injunction to prevent Sarbello from transferring or otherwise dissipating his assets, alleging that Sarbello's financial transactions jeopardized Leone's ability to collect its anticipated judgment.

The Court signed a temporary restraining order and order to show cause. Shortly before the return date, Leone provided additional information documenting that Sarbello had submitted to the Court a

---

1. Sarbello has appealed the conviction, and a determination of the amount of restitution is pending.

2. Title 18 U.S.C. § 1964(c) entitles Leone to file a civil action seeking three times the damages caused by Sarbello's criminal racketeering conviction. Further, 18 U.S.C. § 3664(e) provides that "[a] conviction of a defendant for an offense involving the act giving rise to restitution

under this section shall estop the defendant from denying the essential allegations of that offense in any subsequent Federal Civil proceeding ... brought by the victim."

Thus, Sarbello did not oppose Leone's summary judgment motion, but instead moved for a stay pending his appeal of the criminal matter. That motion was denied.

fraudulent affidavit. On the return date, Leone requested appointment of a receiver or master to oversee Sarbello's assets.

Because the request was late and inadequately briefed, the request for appointment of a receiver or special master was denied. The injunction, however, was granted.

Shortly afterward, Sarbello moved to modify the injunction, and Leone filed a cross-motion renewing its request for appointment of a receiver or special master. After oral argument, the Court in its order of April 6, 1992 modified the injunction to permit Sarbello to meet his reasonable, daily expenses and appointed a special fiscal agent to monitor Sarbello's financial transactions.[3]

### Discussion

The special fiscal agent was appointed in large measure to oversee compliance with the injunction. A brief summary of the injunction, therefore, is in order, to be followed by the reasons for appointment of a special fiscal agent.

### I. The Injunction

■ The issuance or denial of a preliminary injunction is a matter committed to the sound discretion of the trial court. *Penn Galvanizing Co. v. Lukens Steel Co.*, 468 F.2d 1021, 1023 (3d Cir.1972). An injunction may issue to protect a potential future damages remedy of the type Leone seeks here. *Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186 (3d Cir.1990). The *Hoxworth* criteria for issuance of preliminary injunction were satisfied by the following discoveries:

■ 1) Sarbello used assets owned jointly by him and his wife to capitalize a new company, Atlantic Packaging, Inc., owned entirely by Sarbello's wife. This transfer violated Sarbello's voluntary agreement with Judge Lifland in the criminal matter not to transfer or otherwise dissipate assets worth some $700,000 as a condition of bail.

2) Delta Progressive, Inc.—a company in which Sarbello holds a substantial ownership interest—sold two parcels of real estate, together worth $1.625 million. Those sales violated Judge Lifland's order of July 24, 1990, which prohibited any such sale without notification and approval.

3) Further, in an affidavit to this Court, Sarbello represented that the first Delta Progressive property sale—for $1.125 million—accurately reflected the value of his interest in Delta Progressive. He failed to tell the Court, however, that the company had sold a second parcel of real estate for $500,000 and had taken back a purchase money mortgage in that amount—a transaction Sarbello could not have failed to realize would affect the value of his interest in the company.[4]

4) Delta Progressive, Inc. on August 8, 1990—less than three weeks after Judge Lifland signed the order restraining Delta Progressive, Inc. from transferring property—changed its name to Delta Progressive Enterprises, Inc.

5) After Judge Lifland's order it was discovered that two of the assets pledged by Sarbello to support his ability to make restitution to Leone were owned jointly by Sarbello and his wife. Leone, therefore, no longer had the amount of security it believed existed to satisfy the restitution order in the criminal proceeding.

Sarbello's contumacious and duplicitous conduct thus compelled the issuance of an injunction to prevent him from further reducing his assets. *See Hoxworth v. Blinder, supra* at 198. Moreover, since Sarbello's net worth would have been insufficient to meet the expected judgment, all of his assets were made subject to the Court's

---

**3.** Counsel for Leone and Sarbello jointly prepared the order at the Court's direction. This was not, however, a consent order, and Sarbello continues to oppose the injunction and appointment of a special fiscal agent.

**4.** Sarbello's former attorney said at the January 31, 1992 hearing that he prepared Sarbello's affidavit based on a telephone conversation, and then submitted the affidavit along with a photocopy of a certification page used in an earlier affidavit. According to his previous attorney, Sarbello therefore neither reviewed nor signed the affidavit.

injunction.[5] Essentially, the injunction requires that Sarbello receive Court approval before transferring or otherwise conveying or dissipating any assets in which he has an ownership interest of $10,000 or more.

## II. The Special Fiscal Agent

By order of April 6, 1992 the Court denied Leone's motion to appoint a receiver or special master and instead appointed a special fiscal agent. Following are the reasons for that appointment.

### A. Authority for Appointment

■ A court may, in its discretion, appoint a receiver pendente lite.[6] *Donovan v. Bierwirth*, 680 F.2d 263 (2nd Cir.1982), *cert. denied*, 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982); *Tanzer v. Huffines*, 408 F.2d 42 (3d Cir.1969).

■ A receiver may be appointed, for instance, to protect a judgment creditor's interest in a debtor's property when the debtor has shown an intention to frustrate attempts to collect the judgment. *Levin v. Garfinkle*, 514 F.Supp. 1160, 1163 (E.D.Pa. 1981). The appointment of a receiver pendente lite may also be appropriate to aid in the enforcement of an injunction. *United States v. City of Detroit*, 476 F.Supp. 512, 520 (E.D.Mich.1979); *Newman v. State of Alabama*, 466 F.Supp. 628, 635 (M.D.Ala. 1979).

■ Such an appointment, however, should not be made lightly; it is appropriate only in the face of compelling circumstances and in the absence of a less drastic remedy. *Bracco v. Lackner*, 462 F.Supp. 436 (N.D.Cal.1978).

■ As a general rule, moreover, receivers are appointed only when the party seeking receivership has "an equitable interest in the property to be seized or ... judgments that cannot otherwise be satisfied." *Piambino v. Bailey*, 757 F.2d 1112, 1131 (11th Cir.1985), *cert. denied*, 476 U.S. 1169,

106 S.Ct. 2889, 90 L.Ed.2d 976 (1986) (citing 12 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2983 (1973) (the party seeking receivership must have more than a "mere claim" against the defendant)). Of course, a district court can appoint a receiver only on a showing of fraud or the imminent danger of property being lost, injured, diminished in value or squandered, and where legal remedies are inadequate. *McDermott v. Russell*, 523 F.Supp. 347 (E.D.Pa.1981), *aff'd*, 722 F.2d 732 (3d Cir. 1983).

In reversing a trial court's pendente lite appointment of an investment manager as a receiver for a corporate pension plan, the Third Circuit has held that "the appointment of a receiver is a harsh remedy, not to be imposed without a showing of necessity." *Donovan, supra* at 276. The court found the appointment of a receiver to have been unwarranted because an injunction in place at the time was sufficient to protect the plaintiff's interests. *Id.* at 276–277.

### B. A Special Fiscal Agent, Instead of a Receiver

■ Here the plaintiff's needs can be satisfied by the less intrusive device of a special fiscal agent.

A special fiscal agent with the authority and responsibilities described below can minimize future attempts to frustrate court orders, while avoiding financial repercussions that the stigma of being "in receivership" might cause Sarbello.

While the term special fiscal agent does not appear in the legal lexicon of the Third Circuit, the concept certainly does. For instance, in *United States v. Local 30, United Slate, Tile & Composition Roofers*, 686 F.Supp. 1139, 1169 (E.D.Pa.1988), *aff'd*, 871 F.2d 401 (3d Cir.1989), *cert. denied*, 493 U.S. 953, 110 S.Ct. 363, 107 L.Ed.2d 350 (1989) the court appointed a "court liaison officer" to oversee a corrupt

---

**5.** The pre-sentence report prepared in the criminal matter states at page 21 that Leone Industries was defrauded of a minimum of $345,000.

The RICO statute authorizes recovery of treble damages plus attorney's fees for victims of RICO violations. 18 U.S.C. § 1961, *et seq.*

**6.** Furthermore, an evidentiary hearing need not be held beforehand when the record discloses sufficient facts to warrant appointment of a receiver. *United States v. Mansion House Ctr. N. Redevelop.*, 419 F.Supp. 85, 87 (E.D.Mo.1976).

union, creating needed oversight but minimizing interference with union autonomy.

More apposite, however, is the case of *Republic of Philippines v. New York Land Co.*, 852 F.2d 33 (2d Cir.1988). There, the court in a property-ownership dispute appointed a "special property advisor" with full access to accounts, premises and personnel of the properties in question to advise the court on the propriety of expenditures and other transactions involving the properties. The order appointing the special property advisor expressly provided that he would not take possession of, or title to, the properties, and that he was not a receiver. *Id.*, 852 F.2d at 35.

Reviewing the advisor's appointment, the Second Circuit found that the lower court "accomplished clearly necessary oversight in a manner which [was] no more intrusive than necessary." *Id.*, 852 F.2d at 36. The court also surveyed cases in which courts have appointed something akin to a special property adviser, where close supervision but not control was necessary. *Id.*, 852 F.2d at 36–37. In two of these cases, the courts specifically referred to the appointment of a "special fiscal agent." *See SEC v. Alan F. Hughes, Inc.*, 461 F.2d 974, 982 (2d Cir.1972); and *Roach v. Marguilies*, 42 N.J.Super. 243, 246, 126 A.2d 45 (App.Div. 1956).

The following facts in this case justify the appointment of a special fiscal agent:

1) SARBELLO'S EVASIVENESS. Sarbello has failed to be forthcoming with this court and with Judge Lifland about his assets. Even the accounting received pursuant to the injunction fails to make clear what is owned by Sarbello and what is owned by his wife (and therefore, what the court can and cannot reach). Neither the court nor Leone can have any assurance of the status of Sarbello's finances without some independent oversight.

2) SUFFICIENCY OF THE INJUNCTION. Because Sarbello can't be trusted to comply with the injunction, it is insufficient to provide the kind of protection sought by Leone and assurance required by the court; some oversight is necessary to determine that the injunction is being obeyed. The special fiscal agent will have the ability to monitor compliance—or noncompliance—with the injunction, and inform the court accordingly.

3) AN INTEREST IN THE PROPERTY. Leone has summary judgment against Sarbello on liability, and therefore has an interest in the property amounting to more than a mere claim, affording Leone sufficient interest in Sarbello's assets to merit protection.

4) LEONE'S PROBABLE SUCCESS. As noted, Leone already has summary judgment as to liability.

5) POTENTIAL HARM. The appointment of a special fiscal agent should not harm Sarbello at all so long as he complies with the preliminary injunction. The potential loss to Leone by Sarbello's non-compliance with the injunction outweighs any inconvenience that Sarbello might experience with a special fiscal agent.

6) INTRUSIVENESS. Appointment of a special fiscal agent is a narrowly-tailored and far less intrusive remedy than appointment of a receiver. The special fiscal agent will have no more authority over Sarbello than is necessary to ensure that Sarbello complies with the existing injunction. Sarbello retains full control of his finances.

### C. Authority and Responsibility of the Special Fiscal Agent

Following is a description of the authority and responsibilities of the special fiscal agent, tailored to avoid overly stringent measures while providing adequate protection to the plaintiff.

1) As agreed to by the parties, the special fiscal agent will be Robert J. Chalfin, Esq. His primary purpose will be to oversee compliance with the preliminary injunction dated January 31, 1992 and amended by the order of April 6, 1992.

2) The special fiscal agent will permit Sarbello to pay for ordinary, necessary and reasonable family and living expenses with funds from appropriate sources and to conduct ordinary, necessary and reasonable business operations. All other expenses will require the express written approval of

the special fiscal agent after notice to Leone, or the posting of a bond or other security in the amount of $1,251,392.

3) The special fiscal agent may direct Sarbello to produce any business or personal records the agent deems necessary to carry out his responsibilities under the orders of January 31, 1992 and April 6, 1992.

4) The special fiscal agent may examine the records of any business in which Sarbello has or has had, within the last two years, an ownership interest or in which Sarbello directly or indirectly holds a position of employment, authority or control. The special fiscal agent may interview any persons affiliated with these businesses.

5) The special fiscal agent may obtain financial records from institutions which in the last two years have held assets in which Sarbello has had an ownership interest. The special fiscal agent must direct counsel for Sarbello to obtain the documents requested, and Sarbello must provide to his counsel any release necessary to obtain those documents.

6) The special fiscal agent may exercise control over the issuance of checks and the deposit or withdrawal of funds from bank accounts and other investments. Sarbello shall permit the special fiscal agent to be designated a necessary cosigner of any document used to effect a transaction involving any financial account.

7) The special fiscal agent may procure from Sarbello any information needed to supplement the statement of assets received by the Court from Michael Sarbello on March 31, 1992, and may order a certified public accounting of Sarbello's assets and liabilities if necessary to ensure the accuracy of periodic updates of Sarbello's financial condition.

8) The special fiscal agent may monitor and control all receipts, and direct their deposit.

9) The special fiscal agent may seek an amendment of the April 6, 1992 order should he deem it necessary to undertake his responsibilities.

10) The special fiscal agent may serve on any party a copy of this order, providing that Leone and Sarbello are first given reasonable time to object.

11) The special fiscal agent shall copy all correspondence to counsel for both parties, and make all documents related to this matter open for inspection to either party. The parties shall serve on each other copies of any correspondence with the agent.

12) The special fiscal agent shall be paid at a rate of $200 per hour and his associate shall be paid $95 per hour, the cost to be borne by Sarbello. The agent is to submit monthly bills to Sarbello, who shall pay them within 30 days of receipt.

### D. Conclusion

The special fiscal agent will permit close supervision and oversight, without the unwarranted intrusion or a hobbling of Sarbello's legitimate and reasonable finances that may be caused by receivership. The order entered on April 6, 1992 affords the Court the oversight it requires, provides Leone the protection it deserves, and leaves Sarbello with that amount of control over his finances due someone adjudged liable for a civil racketeering violation who has engaged in the kind of machinations culminating in this appointment.