**AVIATION SUPPLY CORPORATION, Plaintiff–Appellee,**

v.

**R.S.B.I. AEROSPACE, INC., Defendant,**

**Ross Barber, Defendant–Appellant.**

**No. 92–2883.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 15, 1993.

Decided July 12, 1993.

Rehearing Denied Aug. 6, 1993.

· E. Ann Wright, Kansas City, MO, argued (Thomas J. Cox, appeared on the brief), for defendant-appellant.

Joe B. Whisler, Kansas City, MO, argued, for plaintiff-appellee.

Before McMILLIAN, MAGILL, and LOKEN, Circuit Judges.

LOKEN, Circuit Judge.

Following a hearing, the district court[1] granted judgment creditor Aviation Supply Corporation's (ASC) motion for appointment of a receiver to acquire and liquidate the assets of judgment debtor Ross Barber. Barber appeals, arguing that the district court abused its discretion and violated his constitutional privilege against self-incrimination. We affirm.

## I.

In October 1991, RSBI Aerospace, Inc. (RSBI), purchased $320,000 worth of airplane parts from ASC on credit. RSBI's debt to ASC was personally guaranteed by Barber, RSBI's owner and president. Two weeks after the parts arrived at RSBI's warehouse in Blue Springs, Missouri, the warehouse was destroyed by fire. RSBI filed a fire insurance claim, its insurer denied that claim, and federal authorities began investigating the fire's origin.

---

1. The HONORABLE JOHN T. MAUGHMER, Chief United States Magistrate Judge for the Western District of Missouri, to whom the case was referred by consent of the parties under 28 U.S.C. § 636(c).

After unsuccessfully demanding payment, ASC commenced this diversity action against RSBI and Barber. Both consented to entry of judgment ($328,536.14 against RSBI and $325,000.00 against Barber on his guaranty). ASC then commenced postjudgment discovery by deposing Barber pursuant to Fed. R.Civ.P. 69(a).

At his February 1992 deposition, Barber broadly invoked the privilege against self-incrimination under the United States and Missouri Constitutions. ASC moved to compel discovery, and at a March 1992 conference before the district court, counsel for Barber offered to produce Barber's November 30, 1991, financial statement, representing that Barber's financial condition had not substantially changed since that time. ASC accepted this offer and advised the district court that the discovery dispute was resolved.

However, on March 27, ASC moved for appointment of a receiver, explaining that, after it received Barber's November 1991 financial statement, counsel for Barber had telephoned to report major unreflected asset transfers. ASC argued that "transfers of assets by Mr. Barber coupled with his absolute refusal to discuss his financial condition" justified appointment of a receiver to protect ASC as judgment creditor. In response, the district court scheduled another deposition of Barber for April 2.

On March 30, Barber signed an agreement granting a security interest in all his personal property to Barber & Sons Tobacco Company, a family-owned entity,[2] to secure the payment of antecedent promissory notes to Barber & Sons Tobacco Co. On June 3, citing the lien granted by this March 30 security agreement, Barber & Sons Tobacco Co. moved a Missouri state court to quash two garnishment summons that ASC had served on local banks holding approximately $63,000 of Barber's assets.

On June 4, the district court granted ASC's motion for a temporary restraining order prohibiting Barber "from selling, transferring, pledging, encumbering, giving, or in any other manner diminishing, any of his assets." On July 14, the court granted ASC's motion for a receiver, concluding that a receiver "is necessary for the protection and preservation of the rights of [ASC, which] has no adequate remedy at law." Among other things, the order appointing a receiver directs Barber to prepare and deliver to the receiver "an inventory particularly describing all of his assets" and to "deliver to the receiver any and all Property ... in his possession or under his control," except money for normal living expenses. The bonded receiver is ordered to take possession of Barber's property, to convert that property into money "after receiving permission of the court," and to deposit all funds into a trust account.

After the district court certified its July 14 rulings for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), Barber appealed and agreed to an injunction restraining him from transferring his assets until the conclusion of the appeal. We have jurisdiction of the appeal under 28 U.S.C. § 1292(a)(2) as well as § 1292(b).

## II.

The appointment of a receiver in a diversity case is a procedural matter governed by federal law and federal equitable principles. See Fed.R.Civ.P. 66 and Advisory Committee's Note; *New York Life Ins. Co. v. Watt West Inv. Corp.*, 755 F.Supp. 287, 289–92 (E.D.Cal.1991); *Midwest Sav. Ass'n v. Riversbend Assocs. Partnership*, 724 F.Supp. 661 (D.Minn.1989); 12 C. Wright & A. Miller, *Federal Practice and Procedure* § 2983. A receiver is an extraordinary equitable remedy that is only justified in extreme situations. Although there is no precise formula for determining when a receiver may be appointed, factors typically warranting appointment are a valid claim by the party seeking the appointment; the probability that fraudulent conduct has occurred or will occur to frustrate that claim; imminent dan-

---

2. Barber's November 1991 financial statement recites:

At an early age, [Barber] was employed in the candy and tobacco business by his father and grandfather who were then operating Barber & Sons Tobacco Co. He has continually been employed by this company and now occupies the position of Vice President in a corporate structure that is owned by his brother, Anthony F. Barber.

ger that property will be concealed, lost, or diminished in value; inadequacy of legal remedies; lack of a less drastic equitable remedy; and likelihood that appointing the receiver will do more good than harm. *See Consolidated Rail Corp. v. Fore River Ry.,* 861 F.2d 322, 326–27 (1st Cir.1988); *Mintzer v. Arthur L. Wright & Co.,* 263 F.2d 823, 826 (3d Cir.1959); *Bookout v. Atlas Fin. Corp.,* 395 F.Supp. 1338, 1342 (N.D.Ga.1974), *aff'd,* 514 F.2d 757 (5th Cir.1975). We review the decision to appoint a receiver for abuse of discretion.

In this case, appointment of the receiver was sought by ASC, a judgment creditor. A receiver may be appointed "to protect a judgment creditor's interest in a debtor's property when the debtor has shown an intention to frustrate attempts to collect the judgment." *Leone Indus. v. Associated Packaging, Inc.,* 795 F.Supp. 117, 120 (D.N.J.1992). *See also Levin v. Garfinkle,* 514 F.Supp. 1160, 1163 (E.D.Pa.1981).

■ ASC showed that, following entry of its judgment, Barber purported to grant a superior security interest in all his assets to a family business, which then intervened to quash ASC's efforts at garnishment. Barber argues that none of his actions has been proven fraudulent or otherwise improper. But this transaction "bears two well-defined badges of fraud: transfer pending the writ of execution and transfer to a relative." *Haase v. Chapman,* 308 F.Supp. 399, 405 (W.D.Mo. 1969) (citations omitted). It is well settled that proof of fraud is not required to support a district court's discretionary decision to appoint a receiver. *See Citronelle–Mobile Gathering, Inc. v. Watkins,* 934 F.2d 1180, 1184 (11th Cir.1991) (transfers to related entities and funneling money out of the country); *Chase Manhattan Bank v. Turabo Shopping Ctr., Inc.,* 683 F.2d 25, 26–27 (1st Cir.1982) ("evidence [of] unfair and arguably fraudulent dealing"); *New York Life,* 755 F.Supp. at 292–93 (diversion of assets to pay unrelated obligations).

Barber further argues that ASC's normal remedies as a judgment creditor are adequate to permit it to enforce its claim against competing creditors such as Barber & Sons Tobacco Co., provided ASC is diligent in pursuing those remedies. In most cases, that would be true. However, the remedies of a judgment creditor include the ability to question the judgment debtor about the nature and location of assets that might satisfy the judgment. That remedy has proved unavailing to ASC. Whenever it questioned Barber about his assets, he invoked his constitutional privilege against self-incrimination. Such a refusal to cooperate, even if grounded in a constitutional right, may be considered in determining whether to appoint a receiver. *See United States v. Ianniello,* 824 F.2d 203, 208 (2d Cir.1987). Moreover, when ASC pressed for discovery, Barber provided an inaccurate financial statement. And when Barber's counsel disclosed the existence of significant recent transactions and ASC moved for appointment of a receiver, Barber granted a blanket security interest to the family company to secure prior debts. Faced with this pattern of willful nondisclosure and false disclosure, followed by transfer to avoid a tenacious judgment creditor, the district court was well within its discretion in turning to a drastic remedy such as a receiver.

Finally, Barber argues for the first time on appeal that the order requiring him to prepare an inventory of his assets and to deliver all his books and records to the receiver violates his privilege against self-incrimination. On this record, we disagree.

■ The privilege protects against compelled testimony; it does not protect the contents of preexisting or voluntarily prepared documents and records. *See United States v. Doe,* 465 U.S. 605, 611–12, 104 S.Ct. 1237, 1241–42, 79 L.Ed.2d 552 (1976). In *In re Harris,* 221 U.S. 274, 31 S.Ct. 557, 55 L.Ed. 732 (1911), the Supreme Court upheld a district court order requiring a bankrupt to deliver "his books of account" to a receiver administering a bankruptcy estate. Justice Holmes explained:

The question is not of testimony but of surrender—not of compelling the bankrupt to be a witness against himself in a criminal case, present or future, but of compelling him to yield possession of property that he is no longer entitled to keep.

221 U.S. at 279, 31 S.Ct. at 558. Though others had predicted that *Harris* was "no longer controlling," *Butcher v. Bailey,* 753 F.2d 465, 468 (6th Cir.), *cert. dismissed,* 473 U.S. 925, 106 S.Ct. 17, 87 L.Ed.2d 696 (1985),

the Supreme Court recently cited *Harris* favorably in holding that the privilege against self-incrimination "may not be invoked to resist compliance with a regulatory regime constructed to effect the State's public purposes unrelated to the enforcement of its criminal laws." *Baltimore Dept. of Soc. Servs. v. Bouknight*, 493 U.S. 549, 556, 110 S.Ct. 900, 905, 107 L.Ed.2d 992 (1990).

*Harris* did not deal with the complicating fact that the act of producing evidence such as preexisting books and records usually communicates the producing party's possession or control of the papers and his belief in their authenticity, information that in some situations may be incriminating. *See Fisher v. United States*, 425 U.S. 391, 410, 96 S.Ct. 1569, 1581, 48 L.Ed.2d 39 (1976). On the other hand, the compelled production of tangible property frequently does not implicate legitimate Fifth Amendment concerns— "[w]here nothing more is involved than surrendering materials already in existence, fully identified and requiring no authentication ... testimony is not involved." *United States v. Schlansky*, 709 F.2d 1079, 1082 (6th Cir.1983), *cert. denied*, 465 U.S. 1099, 104 S.Ct. 1591, 80 L.Ed.2d 123 (1984).

■■■■ Here, the record does not permit us to assess these issues. We do not know the factual basis for Barber's assertion of the privilege.[3] We do not know the nature of the assets that the receiver is ordered to possess or how he will take possession. We do not know whether preparation of an asset inventory will add anything to the self-incrimination equation. Though creation of a document is no doubt compulsory and testimonial in nature, such a document may already exist, or its preparation may be no more than an administrative convenience that, like production of the assets themselves, merely communicates that the assets exist and Barber controls them. *See Fisher*, 425 U.S. at 411, 96 S.Ct. at 1581 (no constitutional protection where information is a "foregone conclusion" from other sources).

These are matters not considered by the district court because Barber did not raise them. As we cannot say that the district court's order on its face violates Barber's privilege against self-incrimination, the Fifth Amendment affords him no grounds for reversal. *See United States v. Rue*, 819 F.2d 1488 (8th Cir.1987); *Capitol Prods. Corp. v. Hernon*, 457 F.2d 541 (8th Cir.1972).

The district court's order appointing a receiver filed July 17, 1992, is affirmed, without prejudice to Barber's right to challenge specific aspects of the implementation of that order as violative of his privilege against self-incrimination.

---

3. In the district court, Barber successfully argued that in a diversity case state law governs assertions of the privilege, *see* Fed.R.Evid. 501, and under Missouri law his mere assertion of the privilege created a presumption of self-incrimination that ASC could not overcome. *See State ex rel. Realty Consultants, Inc. v. Dowd*, 796 S.W.2d 881, 883 (Mo.1990) (en banc). These

issues are not before us, and we express no view regarding them. However, assertion of the privilege in dealing with a receiver appointed by a federal court is a matter of federal law; therefore, Barber has the burden of factually justifying his claim that the receivership order violates his Fifth Amendment privilege.