**U.S. BANK, NATIONAL ASSOCIATION as Trustee, Successor–in–Interest to Bank of America, N.A., as Trustee, Successor to Wells Fargo Bank, N.A., as Trustee, for the Registered Holders of Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass–Through Certificates, Series 2005–C22, Plaintiff,**

v.

**CB SETTLE INN LIMITED PARTNERSHIP, a South Dakota limited partnership; CB Settle Inn, Inc., a South Dakota corporation; Unknown Owners; and Non–Record Claimants, Defendants.**

No. 1:11–cv–00039–JEG.

United States District Court, S.D. Iowa, Western Division.

Nov. 14, 2011.

---

Alison M. Gutierrez, Kathryn E. Jones, Amy Lynn Van Home, Kutak Rock LLP, Omaha, NE, for Plaintiff.

David Martin Newman, Patrick R. Turner, Husch Blackwell LLP, Omaha, NE, for Defendant.

## ORDER

JAMES E. GRITZNER, Chief Judge.

This matter comes before the Court on Motion of Plaintiff U.S. Bank, N.A. as Trustee, Successor–in–Interest to Bank of America, N.A., as Trustee, Successor to Wells Fargo Bank, N.A., as Trustee, for the Registered Holders of Wachovia Bank Commercial Mortgage Trust, Commercial Mortgage Pass–Through Certificates, Series 2005–C22 (Plaintiff) for Appointment of Receiver. Defendants CB Settle Inn Limited Partnership (CB Settle Inn) and CB Settle Inn, Inc. (collectively, Defendants), resist. The matter is fully submitted and ready for disposition.

## I. BACKGROUND

CB Settle Inn, Inc., is the general partner of CB Settle Inn. At all times relevant to this litigation, CB Settle Inn was the owner and record title holder of certain real property known as the Settle Inn and Suites located at 500 30th Avenue, Council Bluffs, Iowa. In 2005, CB Settle Inn and

others entered into a loan agreement with Artesia Mortgage Capital Corporation (Artesia). Artesia loaned CB Settle Inn and others $11,345,000.00. In return, CB Settle Inn and others executed a promissory note in that amount plus interest to Artesia. In addition, to secure the loan, CB Settle Inn and others executed and delivered to Artesia several security interests, including a Commercial Mortgage, Security Agreement, Fixture Filing Financing Statement and Assignment of Leases, Rents, Income and Profits (Mortgage) and an Assignment of Leases, Rents, Income and Profits (ALR) (collectively, the Loan Documents). The loan is also secured by real and personal property in Iowa or Nebraska by four other mortgages or deeds of trust. These Loan Documents were eventually assigned and endorsed to Plaintiff. CB Settle Inn defaulted, and Plaintiff sent notices of default and acceleration demand to CB Settle Inn in May and August 2010. On October 1, 2010, CB Settle Inn filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Nebraska. While the bankruptcy case was proceeding, Plaintiff filed the present suit in the Iowa District Court for Pottawattamie County seeking to foreclose on the mortgage and liens and security interests in personal property, leases, and rents. In addition, Plaintiff sought appointment of receiver pursuant to the Loan Documents, specifically the Mortgage and ALR, which provided that CB Settle Inn "irrevocably consents to the appointment of a receiver" and "shall not contest the appointment of receiver" in the event of default. Mortgage, Notice Removal Ex. 3 § 6.03, ECF No. 1–6; ALR, Notice Removal Ex. 4 § 4.3, ECF 1–8. Defendants timely removed the case to this Court on October 17, 2011, invoking diversity jurisdiction, at which point Plaintiff filed the pending motion.

CB Settle Inn is related to nine other entities that own hotels and who have loan documents substantively identical to CB Settle Inn's. Those nine entities filed bankruptcy petitions concurrently with CB Settle Inn's filing. In several of the cases against the related entities, Plaintiff requested an appointment of receiver, which the courts granted.

Currently pending in the bankruptcy proceedings is CB Settle Inn's motion to dismiss or to convert the case to a Chapter 7 proceeding. At the motion hearing on October 28, 2011, counsel informed this Court that CB Settle Inn's bankruptcy motion to dismiss could be decided by November 14, 2011, and thus Plaintiff requested an expedited ruling by this Court in order to ensure that its collateral is protected.

## II. DISCUSSION

### A. Sufficiency of Service of Process

As an initial matter, Defendants argue they were never properly served. Plaintiff has filed returns of service claiming to have served Kristy Snethen (Ms. Snethen) on behalf of CB Settle Inn and Deb Twiss (Ms. Twiss) on behalf of CB Settle Inn, Inc. Defendants argue that service on CB Settle Inn, Inc., has not been accomplished because David Graf, registered agent for CB Settle Inn, Inc., has not been served. Defendants also argue that service upon CB Settle Inn through Ms. Snethen was insufficient because (1) Ms. Snethen is an employee of Crown Group and (2) Ms. Snethen's authority is limited and not sufficient to qualify her to accept service.

Pursuant to Iowa Rule of Civil Procedure 1.305(6),[1] limited partnerships and

---

1. The Court determines whether service was sufficient "in accordance with the law of the jurisdiction in which the action was filed."

corporations may be served "by serving any present or acting last known officer thereof, or any general or managing agent, or any agent or person now authorized by appointment or by law to receive service of original notice, or on the general partner of a partnership." Iowa R. Civ. P. 1.305(6). "[The Iowa Supreme Court] has long accorded return-of-service affidavits presumptive validity, noting they are impeachable only upon clear and convincing proof of falsity." *Gutierrez v. Wal–Mart Stores, Inc.,* 638 N.W.2d 702, 705 (Iowa 2002) (citing Iowa R. Civ. P. 1.308, (formerly Rule 59(a)), which requires that "Iowa officers may make unsworn returns of original notices served by them, as follows: Any sheriff or deputy sheriff, as to service in that officer's own or a contiguous county; any other peace officer, bailiff, or marshal, as to service in that officer's own territorial jurisdiction. The court shall take judicial notice of such signatures. All other returns ... shall be proved by the affidavit of the person making the service...."); *see also Curtis v. NID PTY, Ltd.,* 248 F.Supp.2d 836, 839 (S.D.Iowa 2003) (holding that the plaintiff raised a rebuttable presumption of valid service by providing proof of service on an assistant of the defendant).

■ Plaintiff filed a return of service which shows that Plaintiff served Ms. Twiss as representative of CB Settle Inn, Inc. The return of service includes the sworn statement of the process server, Donna Hansen. Although Defendants imply in their brief that Plaintiff needed to serve registered agent David Graf, the Court finds that service on Ms. Twiss was adequate to effectuate service on CB Settle Inn, Inc., as service on a registered agent is just one of several ways to effectuate service under Iowa Rule 1.305(6). The affidavit returned states that Ms.

Twiss was served as a manager or agent of CB Settle Inn, Inc. In its Reply in Support of Plaintiff's Motion for Appointment of Receiver, Plaintiff asserts that Ms. Twiss identified herself as an officer of CB Settle Inn, Inc. Defendants do not dispute this. The Court is satisfied that Plaintiff satisfied Iowa's rules of procedure and effectuated service on CB Settle Inn, Inc., by serving Ms. Twiss.

Next, Defendants argue that service on Ms. Snethen does not constitute service on CB Settle Inn because Ms. Snethen is a low level employee of Crown Group. However, Plaintiff argues that Ms. Snethen "identified herself to process server as the general manager of CB Settle Inn's hotel at the registered office for CB Settle Inn in Iowa." Pl.'s Reply Supp. Appointment Receiver 2, ECF No. 20. Even if Ms. Snethen was a lower level employee, "Iowa courts have recognized employees who perform some managerial responsibilities are deemed authorized to receive service." *Curtis,* 248 F.Supp.2d at 838. Without any evidence offered to support their claim that Ms. Snethen is not qualified to accept service except for references in their brief about what Ms. Snethen cannot do, the Court cannot find that Ms. Snethen was not authorized to accept service based on her rank. Moreover, evidence submitted by Defendants states that "Crown Group operates as the hotel management company for [CB Settle Inn]" and that "Crown Group is primarily responsible for [CB Settle Inn's] day to day operations, bookkeeping, and accounting" Decl. Deb Twiss 1–2, ECF No. 14–2, apparently cloaking Crown Group with authority as CB Settle Inn's agent for running its hotel operations. Additionally, because CB Settle Inn, Inc., is the general partner of CB Settle Inn, proper service upon CB Settle

*Norsyn, Inc. v. Desai,* 351 F.3d 825, 829 (8th Cir.2003). *See* Fed.R.Civ.P.81(c)(1) ("These rules apply to a civil action *after* it is removed from a state court.") (emphasis added).

Inn, Inc., would constitute service upon CB Settle Inn.

Furthermore, the record demonstrates that Ms. Twiss and/or Ms. Snethen apprised the appropriate persons of service since Defendants were able to timely remove the case, participate in a status conference, and argue their positions at a hearing on the pending motion. The Court is thus assured that any defect in service has not prevented Defendants from adequately protecting their legal interests.

On this record, the Court finds that service was effectuated on CB Settle Inn, Inc., and CB Settle Inn.

### B. Compliance with Local Rules

■ Defendants argue that Plaintiff's failure to comply with Local Rule 7(b)(3) in its Motion for Appointment of Receiver constitutes waiver of the issue. This argument is without merit. Local Rule 7(b)(3) provides that "a motion must contain citations to all statutes or rules under which the motion is being made." Plaintiff incorporated by reference its Brief in Support of its Motion for Appointment of Receiver, and the brief contained numerous citations to federal statutes and federal case law. Therefore, Plaintiff complied with Local Rule 7(b)(3).

■ Furthermore, Defendants misread the holding of *McCabe v. Macaulay*, No. 05–CV–73–LRR, 2008 WL 2980013 (N.D.Iowa Aug. 1, 2008), the only case they cited in support of their argument that failure to comply with Local Rule 7(b) constitutes waiver. In *McCabe*, the plaintiffs failed to cite any legal authority for one issue in their motion *and their brief. Id.* at *8. Further, the court merely ruled that the failure to cite legal authority in that specific instance constituted waiver, *id.,* not, as Defendants imply, that failure

to properly cite legal authority would automatically constitute waiver. The plain language of Local Rule 1(f)[2] provides that any sanction by the court for a violation of Local Rule 7(b) would be discretionary. Any contention by Defendants to the contrary is misleading and plainly incorrect.

### C. Appointment of Receiver

■ The "appointment of a receiver in a diversity case is a procedural matter governed by federal law and federal equitable principles." *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.,* 999 F.2d 314, 316 (8th Cir.1993). Because this is a diversity case, the Court will apply federal law.

■ Defendants cite *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.,* 999 F.2d 314 (8th Cir.1993), for the proposition that appointment of receiver is an extraordinary remedy and argue that appointment of receiver is inappropriate in this case. In *Aviation Supply,* the Eighth Circuit stated that "[a] receiver is an extraordinary equitable remedy that is only justified in extreme situations." *Id.* at 316. However, *Aviation Supply* did not deal with a contract that explicitly provided for the appointment of receiver upon default. Rather, *Aviation Supply* involved a judgment creditor who was seeking an appointment of receiver after the judgment debtor began transferring his assets. *Id.* Because the parties in this case agreed to the appointment of receiver in the Mortgage and ALR, the Court concludes that *Aviation Supply* is not controlling.

In cases where contracts have explicitly provided for appointment of receiver, courts are split as to whether the advance consent is dispositive or merely a factor to consider in the analysis. *Compare Britton v. Green,* 325 F.2d 377, 382 (10th Cir.1963)

**2.** Local Rule 1(f) provides, in relevant part: "A failure to comply with the Local Rules may be sanctioned by the court in any appropriate manner." LR 1(f).

(holding appointment of receiver proper where parties had agreed that mortgagee was entitled to receiver), *and Am. Bank & Trust Co. v. Bond Int'l Ltd.*, No. 06–cv-0317, 2006 WL 2385309, at *7 (N.D.Okla. Aug. 17, 2006) ("[The plaintiff] is entitled to the appointment of a receiver under the bargained-for provisions of the parties' agreements."), *with Sterling Sav. Bank v. Citadel Dev. Co., Inc.*, 656 F.Supp.2d 1248, 1260 (D.Or.2009) (citing *New York Life Ins. Co. v. Watt West Inv. Corp.*, 755 F.Supp. 287, 292 (E.D.Cal.1991)) ("Consent by the parties in a deed of trust is a factor that commands great weight, but it is not dispositive.").

Being unaware of any controlling law in the Eighth Circuit, the Court has determined that the better approach in this circumstance is to enforce the terms of the contract. The Court does not view the appointment of receiver as a drastic remedy when it is a remedy for which the parties bargained. Defendants concede that the agreements here were a result of arm's length negotiations by sophisticated counsel. Artesia agreed to lend CB Settle Inn and others a substantial amount of money; in return for this loan, Artesia sought and CB Settle Inn agreed that CB Settle Inn would consent to the appointment of receiver in the event of a default. Defendants have conceded that CB Settle Inn is in default of the Loan Documents. Plaintiff assumed the rights and obligations of the Loan Documents through valid assignments, and, having shown a probable right and interest in the mortgaged property as the current mortgagee of the mortgage and holder of the promissory note, is entitled to enforce the terms the original mortgagee negotiated. Under these circumstances, the Court finds no reason not to enforce the terms for which the parties bargained.

Therefore, the Court concludes that a receiver should be appointed immediately in accordance with the terms set forth below[3] to take charge and control of the real property that is the subject of this action, commonly known as the Settle Inn & Suites, located at 500 30th Avenue, Council Bluffs, Iowa 51501, together with all buildings and improvements erected or standing on the real property, all appurtenances, liens, easements, personal property, equipment, intellectual property (including user IDs and passwords), fixtures, privileges, licenses and rights attached or belonging to the real property, and with all rents, issues, income and profits of the foregoing (the Mortgaged Property).

1. Bruce Kinseth, Executive Vice President of Kinseth Hotel Corp. ("KHC"), is hereby appointed receiver ("Receiver") herein of the Mortgaged Property, including any related businesses operated by CB Settle Inn (whether such business be managed by CB Settle Inn or its agents), and including: all cash (notes and coins), leases, rents, issues, earnest money and security deposits, profits and other incomes, purchase contracts and/or leases, rental payments, lease payments, late payments, rent rolls, royalties, receivables, books, papers, accounts, deposits, equities, insurance payments, condemnation awards, accounts receivable, bank accounts, operating accounts, records, files, reports, studies, options, contracts, agreements, permits, licenses, taps, checks, drafts, notes, documents, fixtures, furniture, appliances, supplies, construction materials, goods, equipment, inventory, tax refunds, all

---

**3.** At the October 28 hearing, Defendants offered their objections to Plaintiff's Proposed Order Appointing Receiver, ECF No. 13. The Court has incorporated Defendants' objections and adopted the remainder of Plaintiff's Proposed Order.

intellectual property and other things and articles of any and all types and kinds.

2. Receiver shall post a bond in the penal sum of $25,000.00. The filing of Receiver's bond with this Court shall take place within ten (10) business days after the entry of this Order, but in the interim, Receiver shall take and keep possession, custody and control of the Mortgaged Property to prevent waste thereto and shall have the power to collect the rents, issues, income and profits thereof; to apply the same consistently with this Order and the Loan Documents; and to arrange for the preservation of the Mortgaged Property and its operation and maintenance. Receiver is granted all powers necessary and usual in such cases for the protection, possession, control, management and operation of the Mortgaged Property during the pendency of this action, including the power to sell excess inventory and collect the accounts, income and profits of and from the operation of the Mortgaged Property. The cost of Receiver's bond shall be an expense of the receivership estate and Receiver shall be entitled to reimburse itself for the costs associated with obtaining said bond (including, without limitation, the premium for such bond) from proceeds from the Mortgaged Property.

3. Receiver further shall have the right to appoint KHC to operate and manage the Mortgaged Property under the direction of Receiver. KHC will operate and manage the Mortgaged Property under the direction of Receiver pursuant to a management agreement that shall be entered between Receiver and KHC.

4. As compensation, Receiver shall be paid a fee (the "Property Management Fee") of a monthly payment of 2.5% gross revenues, or $2500.00, whichever is greater. The Property Management Fee shall be payable on a monthly basis and shall paid from the receivership income. The amount of compensation of Receiver and his agents and employees will ultimately be subject to approval by this Court.

5. Receiver shall have the powers and authority usually held by receivers in the State of Iowa, including, but not limited to, the following rights and powers, as may be exercised in Receiver's reasonable discretion to the extent necessary to protect the Mortgaged Property, as defined below, and/or to maximize the value of the Mortgaged Property:

(a) To immediately enter on and take exclusive control and custody of all the Mortgaged Property with full power and authority, as receiver, to take the same into his possession and to incur expenses as may be necessary or advisable in connection therewith, and to deal generally with the Mortgaged Property as this Court from time to time may order;

(b) Without further leave of court, to bring suit for, collect, receive and to take into his possession all the Mortgaged Property; to institute, prosecute, compromise or defend suits and actions at law or in equity relating to the Mortgaged Property, including, but not limited to, proceedings for the collection of rents, income and other amounts or for the removal of any guests(s) and/or tenant(s) in default (whether for failure to pay rent or other amounts when due or otherwise), any tenant(s) whose term has expired and has not been renewed or any person(s) or entity(ies) unlawfully in possession of the Mortgaged Property; and to use and exercise all authority usually granted to

receivers in the operation and management of the Mortgaged Property;

(c) To immediately take whatever steps are necessary to secure, maintain and protect the Mortgaged Property, including, without limitation, the right to notify any banks and/or other financial institutions in which the Mortgaged Property (including all tenant security deposits) may be located to turn over such amounts to Receiver and to notify all guests and/or tenants to turn over all rents that may be due and owing relating to the occupancy of the Mortgaged Property;

(d) To procure or maintain utility services for the Mortgaged Property and to establish all necessary utility accounts for the Mortgaged Property in Receiver's name, but using CB Settle Inn's account information (including the tax identification of CB Settle Inn);

(e) To demand, collect and receive all rents, profits and income derived from the Mortgaged Property, or any part thereof, including all proceeds in the possession of CB Settle Inn which are derived from and/or generated by the Mortgaged Property;

(f) To hire, employ and retain any person, firm, attorneys, certified public accountants, investigators, security guards, consultants, management companies, brokers, engineers, contractors of any kind and any other personnel, employees (including current employees) or professionals, including employees of KHC, as are reasonably necessary to represent, advise and assist Receiver in respect to the Mortgaged Property;

(g) To retain environmental specialists to perform environmental inspections and assessments of the Mortgaged Property, if deemed necessary; and, if deemed necessary and advisable in the discretion of Receiver and funds are available, to remediate the Mortgaged Property or remove and dispose of contaminants, if any, affecting the Mortgaged Property;

(h) To confirm that the Mortgaged Property is adequately insured and in proper repair, to promptly report any evidence or findings to the contrary to the parties and to the Court and, if necessary and funds are available, to disperse funds for the maintenance of fire, hazard and liability insurance for the Mortgaged Property, with the understanding that all such insurance shall be maintained in compliance with the Loan Documents;

(i) To take possession and control of the originals or copies of all the books, records, correspondence, insurance policies and accounts of CB Settle Inn relating to the Mortgaged Property whether in the possession and control of CB Settle Inn or its agents, servants or employees;

(j) To obtain copies of any and all plans, specifications and drawings pertaining to or affecting any part or all of the Mortgaged Property and to be authorized to obtain such plans, specifications and drawings from CB Settle Inn, from architects and contractors retained or formerly retained by CB Settle Inn, or from the city, municipality, county or state on which such Mortgaged Property is situated if Receiver deems it necessary or advisable in his discretion to do so;

(k) To negotiate, extend, terminate, modify, renegotiate, ratify or enter into contracts and/or other agreements affecting or relating to any part or all of the Mortgaged Property without having to pay any termination fees under any terminated contract;

(l) To maintain the Mortgaged Property, prevent waste, construct improvements

and/or make any repairs to the Mortgaged Property that Receiver deems necessary or appropriate, subject to the express approval of Plaintiff;

(m) To settle or extinguish any and all liens at the Mortgaged Property by making recommendations for settlement to this Court; however, any such settlements or extinguishments of liens shall require notice to Plaintiff and CB Settle Inn and the express approval of this Court;

(n) To apply, obtain and pay any reasonable fees for any lawful license, permit or other governmental approval relating to the Mortgaged Property or the operation thereof, confirm the existence of and, to the extent permitted by law, exercise the privileges of any existing license or permit or the operation thereof, and do all reasonable things necessary to protect and maintain such licenses, permits and approvals;

(o) To borrow such funds as may be necessary to satisfy the costs and expenses of the Receivership to the extent that the net rents, profits and/or income derived from the Mortgaged Property are insufficient to satisfy such costs and expenses; provided, however, that any such loans would require notice to Plaintiff and CB Settle Inn and would be subject to any order of this Court appointing Receiver and provided that Plaintiff's rights under the Loan Documents shall not in any way be impaired or otherwise affected in connection with any such indebtedness;

(p) To receive any funds that may be advanced by Plaintiff to be used for the preservation, repair, maintenance and protection of the Mortgaged Property or payment of fees and expenses of Receiver and to ensure that all funds provided to Receiver by Plaintiff be deemed, without filing of any mortgages or financing statements, secured advances secured by a first and senior lien upon the Mortgaged Property including all rents, profits and/or other income derived from the Mortgaged Property and that Receiver be further authorized to issue and execute such documents as may be necessary to evidence the obligation to repay the advances, including, but not limited to, the issuance of certificates of indebtedness evidencing the obligation of the receivership estate (and not Receiver individually) to repay such sums, that the principal sum of each such certificate or document, together with reasonable interest thereon, be payable out of the next available funds from the Mortgaged Property and any such payments shall be made prior to any other payments made from the Mortgaged Property, that Plaintiff and Receiver be authorized to negotiate between themselves specific terms of repayment of any loans or advances by Plaintiff and that Receiver be authorized to enter into any such agreements with Plaintiff without further order of this Court;

(q) To establish bank accounts for the deposit of moneys and funds collected and received in connection with Receiver's administration of the Mortgaged Property (in Receiver's name but using CB Settle Inn's account information, including CB Settle Inn's tax identification number) at any financial institution Receiver deems appropriate, provided that any funds on deposit at the financial institution are fully insured by an agency of the United States government; to convert bank accounts in CB Settle Inn's name to such name as is requested by Receiver; and to revoke authorization for

such signors on such accounts as Receiver requests;

(r) To present for payment any checks, money orders or other forms of payment made payable to CB Settle Inn relating to the Mortgaged Property that constitute rents, profits and/or income of the Mortgaged Property, endorse the same, and collect the proceeds thereof, such proceeds to be used and maintained as elsewhere provided herein;

(s) On a monthly basis, to pay reasonable compensation for services as Receiver, including professional services Receiver deems necessary to retain, at the rates that may be agreeable for payment by Plaintiff, and to reimburse Receiver for customary actual expenses incurred therewith;

(t) After expending the necessary funds to operate and maintain the Mortgaged Property, and paying all reasonable and necessary costs and expenses associated therewith, Receiver shall pay the remaining funds to Plaintiff if Plaintiff has been adjudicated to be entitled to the Mortgaged Property;

(u) To operate the Mortgaged Property, to the extent practicable, in accordance with all applicable requirements of the Loan Documents;

(v) To exercise such other necessary or usual powers as are reasonably necessary to secure, maintain and protect the Mortgaged Property;

(w) To execute and prepare all documents and perform all acts necessary to implement the foregoing in the name of CB Settle Inn or in Receiver's own name; and

(x) Such other and further powers as the Court by its order from time to time may grant.

6. Receiver shall execute and perform all acts and prepare all documents, either in the name of CB Settle Inn, the receivership estate, Receiver or KHC, which are necessary or incidental to operating, preserving, protecting, managing and controlling the Mortgaged Property.

7. Receiver shall: (a) take possession of, and receive from all depositories, banks, brokerages and otherwise, any money on deposit in such institutions associated with, belonging to, arising from or holding any funds related to the operation of the Mortgaged Property, whether such funds be in accounts titled in the name of CB Settle Inn or not; (b) indemnify the institution upon whom such demand is made; (c) open, maintain or close any such accounts and receive and endorse checks pertaining to the Mortgaged Property either in Receiver's name or in CB Settle Inn's name; and (d) exercise authority and custody over all credit card merchant accounts, such as Visa, MasterCard, American Express, Discover and otherwise, as well as all gift card accounts, whether such funds be in accounts titled in the name of CB Settle Inn or not. Receiver may open additional operating accounts and deposit monies and funds collected and received in connection with the receivership estate at federally-insured banking institutions. Receiver may add his agents or employees as additional signatories to any bank accounts, money market accounts, certificates of deposit or any other financial instruments or accounts that Receiver controls.

8. Receiver shall take possession of and immediately operate under and do all things necessary to maintain or renew all existing licenses, permits or other government issued documents necessary for the continued operation of the Mortgaged Property, including all liquor licenses or permits even if not

issued in CB Settle Inn's name. If the issuing agency requires that Receiver or its nominee apply for a new license, permit or other document, Receiver or its nominee may continue to operate under the current permit until the new one is issued to ensure no disruption of service occurs.

9. Receiver may retain existing employees of CB Settle Inn or related parties to continue any business operations, in which case CB Settle Inn will be solely and exclusively responsible for any claims or liabilities in any way related to an employee's employment with or separation from CB Settle Inn or any related management company for the Mortgaged Property, including any compensation, benefits, payroll taxes, workers compensation insurance, severance liabilities, contractual obligations, benefit plans or liabilities related to the Worker Adjustment and Restraining Notification Act (WARN), 29 U.S.C. § 2101, et seq., or similar state statutes or regulations. All related costs will be carried and reported as those of CB Settle Inn, and not of the receivership estate. Receiver may, in the alternative at his sole discretion, retain all employees as those of any management company or other entity hired by Receiver.

10. Once Plaintiff has adjudicated its rights to the Mortgaged Property, Receiver is authorized to place the Mortgaged Property for sale on the market, retain any reputable hotel broker(s) or advertiser(s) or obtain a marketing analysis in connection therewith and undertake any and all other duties associated with selling the Mortgaged Property, including executing documents necessary for the consummation of a sale. Receiver, however, must obtain Plaintiff's prior approval in connection with the following:

(a) the determination of whether and when to sell the Mortgaged Property;

(b) the identification and engagement of any hotel broker, advertiser or any other professional or consultant to be engaged in connection with any sale of the Mortgaged Property, including terms on which any of the foregoing are so engaged;

(c) the agreement as to any terms and conditions governing any sale of the Mortgaged Property; and

(d) the execution of any term sheet, letter of intent, purchase agreement and any other closing documents reasonably necessary in connection with any sale of the Mortgaged Property.

Furthermore, any contract for sale of the Mortgaged Property during the pendency of the receivership shall be subject to this Court's approval.

11. Receiver may undertake the risks and obligations ordinarily incurred by owners, managers and operators of similar businesses and enterprises and that in Receiver's reasonable judgment are necessary for operation of the Mortgaged Property.

12. Receiver may change any and all locks, keys and/or security codes at the Mortgaged Property and limit access thereto and engage a locksmith or security system for this purpose.

13. Court approval shall not be required for Receiver to make repairs to the Mortgaged Property, including, without limitation, any repairs requested or mandated by the City of Council Bluffs, Iowa or any other municipality or building division or official in connection therewith.

14. Receiver may pay any and all outstanding utility expenses, sewer ex-

penses and all other lienable obligations. Receiver may also pay any and all other outstanding obligations to suppliers incurred in arm's length transactions who, prior to the entry of this Order, supplied materials, business supplies and/or labor to or for the benefit of the Mortgaged Property, but only to the extent Receiver shall determine that it is prudent to do so in order to maintain the business relationships with such suppliers for the benefit of the preservation of the Mortgaged Property.

15. CB Settle Inn, its agents, employees and any management companies engaged by CB Settle Inn, including, without limitation, Crown Group, Inc., shall immediately advise Receiver of the nature and extent of insurance coverage at the Mortgaged Property and provide to Receiver all policies including worker's compensation, business, liability and property damage coverage, as well as the amount of coverage and expiration dates of each policy, together with the contact information for the insurance companies.

16. Notwithstanding anything to the contrary in this Order, Receiver shall not expend or disburse more than $10,000.00 at any one time, except for emergency life safety repairs to the Mortgaged Property, without the approval of Plaintiff, provided, however, that nothing in this Order shall obligate Plaintiff to lend or disburse any funds or amounts to Receiver.

17. Receiver shall obtain insurance, if needed, in addition to existing prepaid coverage, for the Mortgaged Property in such amounts, with such companies and to insure against such risks, as Receiver deems necessary or desirable, and Receiver and KHC are to be named as additional insureds, as Receiver deems fit, on all such insurance policies;

18. Receiver shall be the exclusive manager and leasing agent for the Mortgaged Property. Receiver may negotiate, make, enter into, terminate or modify leases, contracts, franchise or license agreements, including upon obtaining Plaintiff's prior consent as to form and content, a customary short-term or receiver's franchise license agreement with Settle Inn, L.L.C., or any affiliate thereof, or any other agreements affecting any part or all of the Mortgaged Property, including any and all leases affecting the Mortgaged Property, and to terminate any existing contract, agreement or instrument that is not commercially reasonable or beneficial to the operation of the Mortgaged Property. However, Receiver may not execute any amendment, modification or new contract, lease or agreement for an amount exceeding $20,000.00 (other than ordinary and necessary trade accounts payable or for those expenditures ordinarily and necessarily incurred in the operation of the Mortgaged Property) or a period exceeding one year without Plaintiff's approval.

19. Receiver shall have the authority and is empowered to operate under any business, liquor, food service or other license currently held in the name of CB Settle Inn or otherwise related to the Mortgaged Property. Receiver shall promptly make application to the appropriate authorities to obtain amended or new licenses as Receiver may deem necessary or advisable. Receiver shall have the authority to take all action necessary to modify existing licenses and/or apply for and obtain new licenses.

20. Receiver shall have the power to issue demands for the freezing and turnover of funds upon any financial institution that Receiver has determined is a depository of funds belonging to or arising from the receivership entities, whether such accounts be titled in the name of CB Settle Inn or not, and to indemnify the institution upon which such demand is made if Receiver deems such indemnification necessary.

21. Receiver shall have the power to issue demands in the name of the receivership upon the United States Postal Service or any other public or private entity to gain exclusive possession and control of such postal boxes as may have been used by CB Settle Inn or its agents for the receipt of rent, income and other mail related to the Mortgaged Property;

22. Receiver shall be authorized to open all mail addressed to CB Settle Inn, its agents, employees or representatives or all persons or entities acting under or in concert with CB Settle Inn received at the Mortgaged Property. Receiver is authorized to make copies of this mail and then forward this mail to CB Settle Inn, its agents, employees or representatives or all persons or entities acting under or in concert with CB Settle Inn.

23. Receiver's receipt of interim fees is subject to final review and approval by this Court. This Court retains jurisdiction to award a greater or lesser amount as the full, fair and final value of Receiver's services.

24. The liability of Receiver is and shall be limited to the assets of the receivership and Receiver shall not be personally liable for any actions taken pursuant to this Order except for its gross negligence or malfeasance. Receiver, Plaintiff and KHC shall not be personally liable for any pre-receivership expenses or any actions taken by CB Settle Inn, its agents, employees and any management companies engaged by CB Settle Inn, including, without limitation, Crown Group, Inc., before, during or after the receivership. KHC and Plaintiff shall have no liability for any acts or omissions of Receiver taken with respect to the Hotel or pursuant to this Order

25. Notwithstanding any other provision hereof, Receiver shall be under no obligation to complete or file tax returns on behalf of CB Settle Inn for income or other taxes arising before the date of this Order. For the duration of his appointment, Receiver shall comply with all applicable laws relating to tax reporting requirements. Receiver shall furnish CB Settle Inn with such accounts, books and records within Receiver's custody or control as reasonably may be necessary in order for CB Settle Inn to complete and file tax returns.

26. No obligation incurred by Receiver in the good faith performance of his duties in accordance with the orders of this Court, whether arising in tort, contract or otherwise, shall be Receiver's obligation. Rather, the recourse of any persons or entity to whom Receiver becomes obligated in connection with the performance of his duties and responsibilities shall be solely against the assets of the receivership estate.

27. Receiver shall not, by the exercise of his authority under this Order, be deemed to own or hold title to the real property or to possess, control or hold title to the subsurface of any property, or any hazardous waste or hazardous substance. The terms "hazardous waste" and/or "hazardous

substance" mean those substances which are regulated by, or form the basis of liability under any federal, state or local environmental laws, including, without limitation, asbestos, polychlorinated biphenyls ("PCB Settle Inns") and radioactive substances or any other material or substance which has in the past, or could in the future, constitute a health, safety or environmental risk.

28. Receiver may at any time file a motion requesting that he be exonerated, discharged and released from his appointment as receiver.

29. Every ninety (90) days, Receiver shall account to the Court for all sums received and expenditures made in association with the receivership and the Mortgaged Property and provide copies of such reports to the parties to this action.

30. CB Settle Inn and all persons and/or entities that have been in active participation with CB Settle Inn (including, but not limited to, employees, officers, shareholders, members, managers such as Crown Group, Inc., affiliates, banks, accountants, landlords and/or any other entities under common control of CB Settle Inn) and all persons or entities now in possession of any part of the Mortgaged Property and not holding under valid leases or rental agreements shall:

   (a) Deliver immediately to Receiver or its agents all of the Mortgaged Property, properly endorsed to Receiver when necessary;

   (b) Deliver immediately to Receiver (a) a complete set of keys to the Mortgaged Property and a letter identifying each person or entity who currently has one or more keys to the Mortgaged Property; (b) the federal and state employer identification number(s) of CB Settle Inn; (c) any and all site plans, specifications, floor plans, drawings and measurements concerning the Mortgaged Property; and (d) any and all records and information it or they may have concerning the Mortgaged Property, including, without limitation, all written and electronic books, records, correspondence, and other information related to: (i) any agreements to which the Mortgaged Property is or may be subject; (ii) any amounts received from the tenants and guests of the Mortgaged Property for 2008, 2009, 2010 and 2011; (iii) including tenant billing statement information; (iv) all accounts at financial institutions for income related to the Mortgaged Property; (v) all liens or other encumbrances at the Mortgaged Property; (vi) property taxes and related appeals; (vii) insurance of all types for CB Settle Inn and tenants (including without limitation liability, property, excess liability, boiler and machinery, professional liability, employee dishonesty, and workmen's compensation) related to the Mortgaged Property; (viii) 2008, 2009, 2010 and 2011 operating statements and budgets; (ix) copies of all maintenance and service contracts; (x) all invoices for services at the Mortgaged Property; (xi) all 2008, 2009, 2010 and 2011 tenant files, including leases, lease abstracts and sample leases; (xii) a current and accurate copy of all electronic information for items related to accounting including guest information for 2008, 2009, 2010 and 2011; (xiii) a schedule of all capital expenditures put into the Mortgaged Property over the last four years and any items of deferred maintenance and capital currently required; (xiv) all guest deposits

and guest reservations for future stays or events at the Mortgaged Property; (xv) all current copies, including the most recent copy, of any ALTA survey, Phase I and Phase II environmental report, physical condition/engineering report and appraisal; (xvi) corporate documents, including original documents of formation and title documents relating to CB Settle Inn or the Mortgaged Property; (xvii) all other aspects of the Mortgaged Property records that are or may be necessary or pertinent to Receiver's operation and management of the Receivership; (xviii) all documents or records of any kind regarding employees, including information pertaining to employment, compensation, discipline or benefits, and including agreements with health providers or insurers, pension and retirement benefit plans; (xix) all business plans, whether completed or proposed; (xx) any documents relating to the potential sale of the Mortgaged Property; (xxi) all documents, agreements, manuals or other materials relating to the operation, management or maintenance of the hotel franchise agreement; (xxii) all accounting records, such as accounting software, general ledgers, accounts receivable records, accounts payable records, cash receipts records and other accounting documents; and (xxiii) any other information requested by Receiver;

(c) Deliver immediately to Receiver all sums in existence on the date hereof that are related or pertain to, or derived from the Mortgaged Property, including, but not limited to: (a) all cash on hand; (b) all cash equivalents and negotiable instruments (such as checks, notes, drafts or other related documents or instruments); and (c) all sums held in accounts in any financial institutions, including, without limitation: (i) tenant/lessee and guest security deposits; (ii) deposits held in escrow for any purpose, such as for payment of real estate taxes and insurance premiums; (iii) proceeds of insurance maintained for or pertaining to the Mortgaged Property; (iv) rent or prepaid rent; (v) funds designated or intended for capital improvements, repairs or renovations to or in connection with the Mortgaged Property; and (vi) all other sums of any kind relating to the use, enjoyment, possession or improvement of the Mortgaged Property;

(d) Immediately turn over to Receiver all passwords needed to access all records and files maintained on any computer, server or other electronic device located at the Mortgaged Property. CB Settle Inn, its agents and employees, shall provide Receiver with access to any other computers, servers or other electronic devices on which information related to the Mortgaged Property is stored, together with passwords needed to access the email accounts of CB Settle Inn, its agents and employees;

(e) Answer under oath to Receiver all questions regarding the maintenance and operation of the Mortgaged Property, if necessary, and in the event that Receiver deems it necessary to require the appearance of the aforementioned persons, the production of documents, information or any other form of discovery concerning the assets, property or business assets of CB Settle Inn, or any other matter relevant to the operation or administration of the receivership estate or the collection of funds due to CB Settle Inn, Receiver shall direct notice for any such appearance

by certified mail, and said persons shall appear and give answer to Receiver, produce documents or submit to any other form of discovery within ten (10) calendar days of service of said notice at the time and place designated therein, provided that CB Settle Inn would not be required to turn over any documents protected from disclosure by either the attorney-client privilege or the attorney work product privilege;

(f) Immediately sign or execute any document necessary to allow Receiver to carry out the duties set forth herein; and

(g) Immediately turn over to Receiver: (a) all licenses, permits, notices, approvals, citations, violations or fines, whether in effect or lapsed, issued by any federal, state, local or quasi-public agency or governmental authority relating to the Mortgaged Property, including any liquor licenses maintained in connection with the Mortgaged Property as of the date hereof; (b) tax assessments, liens or notices of deficiency, if any; and (c) all mechanics' liens, stop notices or demands for payment by actual or potential mechanics' lien holders.

31. All tenants, guests or lessees in possession of any part of the Mortgaged Property, and any other persons or entities as may be lawfully in possession of the Mortgaged Property, shall be directed, until further order of this Court, to pay over to Receiver all rents of the Mortgaged Property now due and unpaid or that may hereafter become due and all persons or entities liable for such rents shall be enjoined and restrained from paying any rents for the Mortgaged Property to CB Settle Inn, its agents, servants or attorneys.

32. CB Settle Inn, its agents, employees and any management companies engaged by CB Settle Inn, including, without limitation, Crown Group, Inc., shall immediately identify the holder of any liquor licenses or other licenses for the Mortgaged Property.

33. CB Settle Inn shall immediately name Receiver as an additional insured on the insurance policy(ies) for the period that Receiver is in possession of the Mortgaged Property. CB Settle Inn is prohibited from cancelling, reducing or modifying any and all insurance coverage currently in existence relating to the Mortgaged Property.

34. Upon presentation of a copy of this Order, all banks and financial institutions must provide copies to Receiver of any requested records regarding accounts related to the operation of the Mortgaged Property.

35. No fees and expenses incurred in relation to Receiver's general office administration or overhead, including office supplies, employee wages, taxes and benefits and other charges shall be an expense of the receivership estate unless incurred directly and solely for the benefit of the receivership estate.

36. CB Settle Inn, its agents, employees and any management companies engaged by CB Settle Inn, including, without limitation, Crown Group, Inc., be enjoined and restrained from involving themselves in the possession, operation or management of the Mortgaged Property, or in any way from interfering with the duties or performance of Receiver including, but not limited to: (a) *interfering with Receiver, directly or indirectly, in the collection of rents, profits and/or any other income derived from the Mortgaged Property;* (b) collect-

ing or attempting to collect the rents, profits and/or any other income derived from the Mortgaged Property; (c) extending, dispersing, transferring, assigning, selling, conveying, devising, pledging, mortgaging, creating a security interest in or disposing of the whole or any part of the Mortgaged Property (including the rents, profits and/or income derived thereof) without the prior written consent of Receiver; provided, however, that Plaintiff shall not be restrained or prohibited from initiating and/or completing a sale by judicial or non-judicial foreclosure of the Mortgaged Property, or any portion thereof, and thereafter taking title and possession thereto; and (d) doing any act that will, or that will tend to, impair, defeat, divert, prevent or prejudice the preservation of the Mortgaged Property (including the rents, profits and/or income derived thereof) or the interest of Plaintiff in the Mortgaged Property.

37. During the pendency of this receivership, all creditors and other persons seeking possession or control over any part of the Mortgaged Property (except for governmental authorities exercising their police powers to protect public health or safety and except for Plaintiff), and all others acting on behalf of CB Settle Inn and its officers, directors, members, agents and employees, and all other persons acting at their direction or in concert with persons allegedly acting on CB Settle Inn's behalf, including sheriffs, marshals and all other officers and deputies, and their respective attorneys, servants, agents and employees, shall be temporarily stayed and restrained from doing anything to interfere with the possession, custody, control, use or management by Receiver of the Mortgaged Property.

38. Receiver shall be authorized to register this Order with the appropriate government offices and courts and to serve a copy hereof on any person or entity who Receiver reasonably believes to be in control of Mortgaged Property.

39. Receiver shall serve until the earlier of: (a) the sale of the Mortgaged Property; (b) Receiver's voluntary or involuntary relinquishment of its duties pursuant to an order of this Court; (c) upon written request at any time by Plaintiff; or (d) dismissal of Plaintiff's Petition by this Court.

40. In the event that the rights and powers granted to Receiver are terminated prior to the sale of the Mortgaged Property or the dismissal of Plaintiff's Petition, this Court shall ex parte appoint a replacement receiver nominated by Plaintiff subject to the Court's right to confirm the qualifications of such nominee.

41. Upon termination of the receivership, Receiver shall wind up receivership affairs and distribute all receivership income. Within sixty (60) days of the termination of the receivership, Receiver shall file a final accounting report with the Court and submit a copy to Plaintiff along with all other parties who may enter their appearance in this action. If no objections to the final accounting and report have been filed within fifteen (15) days of the filing of the final accounting and report, the final accounting and report will be accepted by the Court and the Court will enter an order discharging Receiver.

42. Nothing herein contained shall be construed as interfering with or invalidating any existing lawful lien or claim upon the Mortgaged Property by any person or corporation.

### III. CONCLUSION

For the reasons stated, Plaintiff's Motion for Appointment of Receiver, ECF No. 7, is **granted,** under the circumstances and under the authority set forth above.

**IT IS SO ORDERED.**